[Civ. No. 694.   Fifth Dist.   Jan. 18, 1967.]

JOSEPHINE ROMEO et al., Plaintiffs and Appellants, v. JUMBO MARKET, Defendant and Respondent.

818

Horace E. Cecchettini and William S. Gregory for Plaintiffs and Appellants.

Bradford, Cross, Dahl & Hefner and John Quincy Brown, Jr., for Defendant and Respondent.

GARGANO, J.—Plaintiffs appeal from a judgment entered upon a jury's verdict in favor of the defendant. Plaintiff Josephine Romeo was injured as a result of a fall which occurred on November 29, 1962, in the defendant's food market. She had gone to the market to shop for groceries, accompanied by her sister-in-law, Norma Scorza. After she

arrived she selected a shopping cart in which to place her groceries and began to shop, walking up and down the various aisles. As she was proceeding down an aisle, pushing her cart in front of her, she turned her head to talk to Norma, who was following about 10 feet behind. At that point, while plaintiff was still looking at Norma, her feet went out from under her and she fell on her back, allegedly sustaining the injuries of which she complains. After the fall a broken jar of Maraschino cherries was discovered where plaintiff had fallen. The spilled syrup (still in a liquid condition) and red cherries were spread over the light grey floor in a circular area of approximately one and one-half feet in diameter. The broken glass was also scattered around the floor. The plaintiff had not seen the broken bottle prior to her fall, and it is conceded that neither the plaintiff nor anyone else knew how the bottle had been broken.

Plaintiffs' first contention is that the trial court committed prejudicial error in allowing defendant's attorney to call plaintiffs' attorney as a witness against his own clients. In this connection, they assert that because of "the extreme closeness of the issues of the case" the testimony should not have been admitted by the court over the objection of their counsel. They also argue that in being called as a witness their counsel was put in the embarrassing position of having to give testimony detrimental to his clients' cause, and that this was prejudicial to their case.

At the trial Doctor Steinberg was called by plaintiffs' counsel to testify on behalf of the plaintiffs. In rebuttal defense counsel called Doctor Nork who testified as a witness for defendant. The testimony of both doctors was mainly concerned with the nature of the plaintiff's injury, the extent to which the fall contributed thereto, and the extent to which previous back ailments were the source of her infirmity. Just before defendant rested its case the following transpired:

". . . just before we rest I would ask for a stipulation from Mr. Cecchettini that Doctor Steinberg had seen and read Doctor Nork's report before he testified.

MR. CECCHETTINI: Your Honor, I take except to counsel's remark and cite it as misconduct. He has never asked me this before, and I have no knowledge whatsoever about it. I refuse to make such a stipulation.

MR. BROWN: I'll call Mr. Cecchettini to the stand as my next witness, then.

THE COURT: Very well. Mr. Cecchettini.

MR. CECCHETTINI: Your Honor, I object to this impropriety and take specific exception to it and cite counsel for misconduct; I want the record to show that.

THE COURT: Very well.

The following testimony of Mr. Cecchettini was given under direct examination by Mr. Brown:

"MR. BROWN: Q. Mr. Cecchettini, did I provide you with a copy of Doctor Nork's written report?

A. You most certainly did after about one year of constant demand, counsel.

Q. One year?

A. Approximately.

Q. So whatever it took from the time you got the report, eight months—

A. Ten months.

Q. Well, Mr. Cecchettini, I gave you a copy before trial of Doctor Nork's report.

A. Of course you did. Court rules provide for that.

Q. Did you forward it to Doctor Steinberg?

A. Yes, I did.

Q. Did he have it in his file when he came to testify last week?

A. Yes, he did.

MR. BROWN: Thank you. That is all I have.

MR. CECCHETTINI: Your Honor, I move that all of this testimony be stricken and the jurors admonished to disregard it as it is immaterial and irrelevant and misconduct on the part of Mr. Brown.

THE COURT: Well, the motion is denied. Mr. Cecchettini, please take your seat.''

An attorney participating in a trial is competent to give testimony (*American Trust Co.* v. *Fitzmaurice,* 131 Cal.App.2d 382 [280 P.2d 545]). The real objection to such testimony (where the attorney testified on behalf of his client) is not one of competence, but of legal ethics (*Thompson* v. *Beskeen,* 223 Cal.App.2d 292 [35 Cal.Rptr. 676]). Thus, if an attorney has relevant information he may be compelled to testify even if it is detrimental to his client, unless the information is privileged. As was stated in *People* v. *Boford,* 117 Cal.App.2d 576, 580 [256 P.2d 334]: "It is true, as stated by the court, that it is unusual when one side calls the attorney of the opposing side to stand as a witness, but if the *testimony* sought to be elicited is material it may be done. Even the judge who is trying a case, and any juror,

may be called as a witness by either party. (Code Civ. Proc., § 1883.) Section 1879 of the Code of Civil Procedure provides that all persons except certain ones specified in sections 1880 and 1881 may be witnesses. Attorneys are excepted only when their testimony would reveal communications declared privileged. No privilege was claimed in the instant case nor would the facts have supported such a claim had it been made. . . ."

█  Therefore, since the testimony elicited from plaintiffs' attorney was admittedly material and relevant (plaintiffs admitted that defendant could have easily solicited this information from Doctor Steinberg), and since no claim of privilege was made and none is now asserted, plaintiffs' argument that their attorney should not have been compelled to testify simply because of the closeness of the issues or because he was put in the embarrassing position of having to testify against his clients, is without merit.

Plaintiffs also contend that the court abused its discretion in compelling their attorney to testify because his position of integrity and competence was damaged, and because he was made to appear that he was attempting to conceal important evidence. This contention is equally without merit.

It goes without saying that the better practice when requesting a stipulation from opposing counsel is to do so outside of the presence of the jury. When this is done embarrassing and even harmful situations are avoided. The stipulation requested by defendant's counsel in this case, however, was innocuous and would not have injured plaintiffs' case in any manner had Mr. Cecchettini simply refused to so stipulate. Mr. Cecchettini chose not to do so. Instead, he chose to elaborate by stating in the presence of the jury that he "had no knowledge about it." Thus, the die was cast and plaintiffs' counsel is responsible for the embarrassing position in which he later found himself. Had the trial court ruled otherwise, it would have unduly penalized the defendant for Mr. Cecchettini's imprudent statement. If plaintiffs' argument is carried to its logical conclusion, the defendant could not even have recalled Doctor Steinberg to testify, for his testimony would have been more damaging to Mr. Cecchettini's reputation. By testifying as he did, Mr. Cecchettini at least demonstrated that he was a truthful witness and that his previous statement was probably an impulsive outburst made during the heat of trial.

Plaintiffs' argument is not fortified by their reference to Code of Civil Procedure section 2066 which protects a witness against improper or insulting questions. This section applies when the questions have little or no evidentiary value, and where their sole or principal purpose is to insult or degrade the witness.

Plaintiffs next contend that the court committed prejudicial error in allowing defendant to elicit evidence that the market was always clean during Norma Scorza's shopping visits, and then compounded that error by refusing to allow the witness to testify that on one occasion the floor was dirty.

Norma Scorza was called as a witness to testify for the plaintiffs. She was questioned by Mr. Brown on cross-examination as follows

"Q. And the time Mrs. Romeo fell, the store was a year or so old, a year or two old?

"A. I guess so.

"Q. And so far as you know it was always kept in a neat and clean condition, wasn't it?

"MR. CECCHETTINI: (Interposing) Objection, irrelevant, incompetent and immaterial, your Honor.

"THE COURT: I'm goint [sic] to overrule the objection.

"MR. CECCHETTINI: Always clean, your Honor, is my objection.

"THE COURT: As far as she knows. This means to the Court, and I assume to the witness on the occasions when she was present in the store.

"MR. BROWN: Q. When you yourself were present, the store was run in a neat and clean condition?

"A. Well, it is not a dirty store, it is a new store. You want to know broken linoleum and all that, no, it is a new store.

"Q. And the store was run to your satisfaction I take it, or you wouldn't remain to be a customer, right?

"A. Right."

Although plaintiffs' counsel interposed a general objection to the question first put to the witness by defendant's counsel, he later explained to the court that his objection was to the use of the words "always clean." Accordingly, the question was rephrased by Mr. Brown (with the objectionable language removed therefrom), and the witness was permitted to answer without further objection. Thus, even if the testimony was inadmissible the objection was waived. ■ When evidence is received without objection no complaint

may be made upon appeal that the evidence was not admissible under the rules of evidence. (*Standley* v. *Feather River Pine Mills*, 112 Cal.App.2d 101 [245 P.2d 657].)

Moreover, at the end of the cross-examination plaintiffs joined defendant in offering into evidence a four-page written statement previously made and signed by the witness. This statement, which was read into the record in its entirety at Mr. Cecchettini's request, contained the following excerpt: "I am a regular shopper at this store, and this is the first time I have ever seen anything on the floor. The store is always very clean. The floor of the store is an inlaid linoleum tile and in good condition, with the exception of the broken bottle of cherries."

▌ Consequently, even if it is assumed arguendo that Mr. Cecchettini's initial objection had not been waived by his subsequent explanation and failure to object, the objection was certainly waived when he joined Mr. Brown in the offer of the witness's written statement which contained the same objectionable material. (*Heiman* v. *Market Street Ry. Co.*, 21 Cal.App.2d 311 [69 P.2d 178].) In *Heiman* defendant's motion pictures were received in evidence over objection. Later on plaintiffs caused the pictures to be exhibited again to the jury. The court held that in doing so plaintiffs waived their prior objection.

▌ In any event, we are not persuaded by plaintiff's argument that the disputed testimony was clearly irrelevant. It was apparently offered to prove defendant's habit of maintaining its store in a clean and orderly condition, and as proof that defendant had fulfilled its duty to plaintiff Josephine Romeo notwithstanding the accident. Under proper circumstances, such evidence is admissible. The general test as to whether testimony is relevant is whether it tends logically, naturally and by reasonable inference to prove or disprove a material issue. (*People* v. *Jones,* 42 Cal.2d 219 [266 P.2d 38].) Consequently, habit evidence has been used to prove lack of due care and conversely, habit of care in certain activities may be shown to prove due care. (Witkin, California Evidence (2d ed. 1966) § 338, pp. 297-298.)

Admittedly, Josephine Romeo was a business invitee of the defendant at the time of the accident. Thus, defendant was under a duty to keep the premises reasonably safe for her use as a business visitor. As a matter of fact, it was under a duty to keep the store aisles and passageways in a reasonably safe condition so as not to unnecessarily expose the plaintiff, as

well as other customers, to danger or accident. (*Neel* v. *Mannings, Inc.*, 19 Cal.2d 647 [122 P.2d 576]; *Goldsmith* v. *Mills*, 130 Cal.App.2d 493 [279 P.2d 51].) However, as stated in *Louie* v. *Hagstrom's Food Stores*, 81 Cal.App.2d 601, 606-607 [184 P.2d 708]: ". . . To impose liability for injuries suffered by an invitee due to the defective condition of the premises, the owner or occupier 'must have either actual or constructive knowledge of the dangerous condition or have been able by the exercise of ordinary care to discover the condition, which if known to him, he should realize as involving an unreasonable risk to invitees on his premises. His negligence in such cases is founded upon his failure to exercise ordinary care in remedying the defect after he has discovered it.' . . ."

In the instant case, plaintiffs do not contend that defendant had actual knowledge of the broken bottle of Maraschino cherries, nor is there any evidence to support a finding that the bottle was broken as a result of defendant's negligence. To the contrary, plaintiffs' theory of defendant's liability is obviously based on its failure to detect and remedy the dangerous condition which existed. In other words, plaintiffs apparently contend that the dangerous condition would have been discovered and remedied if defendant had used reasonable care in the operation and management of its store. It was probably to fortify this theory that plaintiffs' counsel questioned defendant's employee as to defendant's janitorial policies and procedures relating to the method, manner and frequency of cleaning its store. If so, the questions were relevant and the testimony admissible. Defendant was also entitled to offer evidence of its habit of maintaining its store in a clean and orderly condition, not only to rebut any contrary inference, but as evidence that it had exercised due care.[1] Such habit could be shown not only through its janitorial procedures, but by the testimony of informed and knowledgeable eyewitnesses as well.[2]

---

[1] In the instant case it is admitted by both parties that there were no eyewitnesses as to how or when the bottle of cherries was broken. Thus, even under the limitation which excludes habit and custom evidence where there are eyewitnesses, this evidence was admissible. Moreover, section 1105 of the new Evidence Code abandons this restriction. As the comment under that section states, "Eyewitnesses frequently are mistaken, and some are dishonest. The trier of fact should be entitled to weigh the habit evidence against the eyewitness testimony as well as all of the other evidence in the case."

[2] A better foundation could probably have been laid to qualify the witness, Norma Scorza, to testify on the condition of the store. For example,

In rebuttal to the plaintiffs' contention that the court erred in refusing to allow the witness Norma Scorza to testify on redirect examination that on a certain occasion the floor was dirty, the defendant argues that plaintiffs were attempting to offer evidence of a prior accident without meeting the requirements of the rule on the admissibility of evidence of prior accidents. Defendant further argues that if the evidence was not offered for this purpose, then plaintiffs were attempting to impeach their own witness without laying a proper foundation to do so. We do not agree with the defendant on either of these points.

The disputed testimony was not necessarily offered to prove a prior accident or a prior dangerous condition. The question asked by plaintiffs' counsel was directed to the answer previously made by the witness during cross-examination, and was evidently asked to enable the witness to further explain her answer. In other words, plaintiffs' counsel was entitled to ascertain exactly what the witness meant when she said the store was always clean, and her answer was not rendered inadmissible simply because it disclosed a prior dangerous condition. Evidence which is admissible for one purpose but inadmissible for another is admissible for its proper purpose. (Witkin, California Evidence (2d ed. 1966) § 316, pp. 279-280.)

Moreover, plaintiffs' counsel was not attempting to impeach plaintiffs' own witness. As we have stated, the question was not asked to discredit or contradict the witness. Furthermore, in questioning the witness as to the store's condition at times other than when the accident occurred, the defendant may have exceeded the scope of proper cross-examination. Thus, in the practical sense (although perhaps not in the technical sense for plaintiffs' counsel did not object on this ground) the defendant had made Norma Scorza his own witness on the subject of the condition of the store at times other than the date of the accident; consequently, plaintiffs' counsel should have been given greater leeway in examining the witness in relation to her previous answer. In

---

questions relating to the frequency of her shopping visits to the store, when in point of time in relation to the accident the visits occurred, etc., could have been asked. Plaintiffs' counsel, however, did not object on this ground, nor did he request permission of the court to take the witness on *voir dire*. In fact, as we have stated, he explained to the court that his objection was to the use of the words "always clean," which obviously called for a conclusion of the witness. Thus, since the witness testified that she was a regular customer, and since no objection was made for lack of foundation, the objection was waived.

other words, in view of the broad discretion of the trial judge in controlling the scope of cross-examination and impeachment, plaintiffs' counsel should have been given the opportunity to clarify the new matter which had been injected into the case by defendant's cross-examination.

We do not believe, however, that the error was prejudicial and that it is reasonably probable that a more favorable verdict to plaintiffs would have resulted had the disputed testimony not been stricken by the court. (*People* v. *Watson,* 46 Cal.2d 818 [299 P.2d 243].) In the first place the witness's ultimate answer to Mr. Brown's question was not particularly harmful to the plaintiffs. She made it reasonably clear that by stating that the store was always clean she meant that it was a new store without broken linoleum or similar defects. Secondly, as plaintiffs have admitted, the evidence of defendant's negligence was slight. In fact, there was substantial evidence to the contrary, viz., there was substantial evidence to support a finding that the condition had not existed long enough to be discovered in the exercise of due care. For example, the cherries observed on the floor after the accident were whole, not smashed or damaged; the juice was fresh and had not become solidified or stuck to the floor; it was still in a liquid condition and the cherries appeared to be fresh. Moreover, there was substantial evidence to support a finding of contributory negligence on the part of Josephine Romeo. She did not look down the aisle before she fell and she never saw the cherries, broken bottle, juice or syrup on the light grey floor. At the time she fell she was engaged in a conversation with her sister-in-law, Norma Scorza, about Christmas napkins. In fact, she had turned her head over her right shoulder and was looking behind at Norma when the fall occurred.

For the foregoing reasons the judgment is affirmed.

Conley, P. J., and Stone, J., concurred.