[Civ. No. 56547. Second Dist., Div. Five. Apr. 8, 1980.]

PHAMELINE SCOTT, Plaintiff and Appellant, v.
ALPHA BETA COMPANY, Defendant and Appellant.

COUNSEL

Charles J. Fleishman for Plaintiff and Appellant.

Duryea, Hogan & Baynes and James M. Baynes for Defendant and Appellant.

OPINION

**ASHBY, J.**—Plaintiff Phameline Scott slipped and fell in a grocery store of defendant Alpha Beta Company. A jury found defendant 60 percent negligent and plaintiff 40 percent negligent and awarded plain-

tiff $120,000 damages after reduction on account of her negligence. The trial court denied defendant's motions for judgment notwithstanding the verdict and for new trial. Defendant appeals from the judgment and the denial of its motion for judgment notwithstanding the verdict, contending there is no substantial evidence of negligence on its part. Plaintiff also appeals from the judgment, contending there is no substantial evidence of contributory negligence on her part.

At about 7 p.m. on September 10, 1976, plaintiff walked into defendant's grocery store at 3581 Century Boulevard in Lynwood. It was raining "kind of heavy" at the time, and had been raining all day.[1]

Defendant's employees had placed a 20-foot long rubber mat inside the entrance to the store, because defendant's terrazzo floor was known to become slippery when wet. Normally the store has about 2,000 customers per day.

When plaintiff stepped off the rubber mat, she slipped; her leg went out from underneath her and she fell down. Lying on the floor, plaintiff noticed that the floor was wet.[2]

Plaintiff suffered injury to her left knee and had surgery shortly after the accident. Her knee will never be normal and she may require further surgery or an artificial knee in the future.

A doctor testified on behalf of defendant that based on plaintiff's medical records containing complaints by her in July and August 1976 about her left leg "giving out," there was a possibility she fell because her "trick knee" simply went out.

Defendant's store manager and assistant manager testified that plaintiff was wearing furry house slippers. This was denied by plaintiff, who said she was wearing rubber soled slip-on shoes.

---

[1] A total of 1.74 inches precipitation was recorded for the Los Angeles Civic Center on September 10, 1976.

[2] Plaintiff's expert testified that a rubber mat and a wet terrazzo floor have different coefficients of friction, and that a person stepping from the mat to the floor would be likely to slip.

DEFENDANT'S APPEAL

Defendant cites numerous California cases for the proposition that in a slip-and-fall accident the plaintiff, in order to establish the store owner's negligence, must show that the store owner had knowledge of the dangerous condition of the premises or that the condition had existed for such a period of time that the store owner should have discovered the condition in the exercise of reasonable care to inspect the premises.[3] Defendant argues there is no substantial evidence how long the water had been on the floor and that therefore defendant has no liability for plaintiff's injuries.

None of the cases cited by defendant involves rainwater being tracked into a store by a steady stream of customers. Defendant's cases virtually all involve some product, merchandise, or other object having been spilled or otherwise deposited on the floor or ground. In terms of notice to the store owner of the existence of a dangerous condition, the occasional spilling of a product on the floor is factually distinguishable from rainwater being deposited on the floor as customers enter on a rainy day.

Defendant already knew that it was raining, that water from the customers' shoes and clothing or umbrellas would inevitably be deposited on the floor as they entered, and that the floor would be slippery when wet. That is the very reason defendant's employees put down a long rubber mat.

This store normally had 2,000 customers a day. By its very nature, the process of rainwater being tracked in by customers was a continued one, so long as the rain continued. In these circumstances defendant had sufficient notice, and it was an issue for the jury to determine whether the steps defendant took to remedy or warn about the danger were sufficient. The mat collected water below its ridges but did not absorb water. There was a substantial possibility water would be deposited

---

[3]*Gold* v. *Arizona Realty etc. Co.* (1936) 12 Cal.App.2d 676 [55 P.2d 1254]; *Crawford* v. *Pacific States S. & L. Co.* (1937) 22 Cal.App.2d 448 [71 P.2d 333]; *Owen* v. *Beauchamp* (1944) 66 Cal.App.2d 750 [152 P.2d 756]; *Girvetz* v. *Boys' Market, Inc.* (1949) 91 Cal.App.2d 827 [206 P.2d 6]; *Frank* v. *J. C. Penney, Inc.* (1955) 133 P.2d 123 [283 P.2d 291]; *Oldenburg* v. *Sears, Roebuck & Co.* (1957) 152 Cal.App.2d 733 [314 P.2d 33]; *Perez* v. *Ow* (1962) 200 Cal.App.2d 559 [19 Cal.Rptr. 372]; *Romeo* v. *Jumbo Market* (1967) 247 Cal.App.2d 817 [56 Cal.Rptr. 26]. Numerous similar cases are summarized in *Oldenburg* v. *Sears, Roebuck & Co., supra,* 152 Cal.App.2d at pages 746-748, asterisked footnote.

adjacent to the mat or that customers' shoes might still be wet when they reached the end of the mat. The difference in friction between the mat and a wet floor made slipping a strong possibility. The jury might reasonably conclude that merely placing a long rubber mat on the floor did not constitute reasonable care toward the customers under the circumstances.

The parties have cited no California case involving rainwater being tracked in by customers, but *Denver Dry Goods Company* v. *Gettman* (1969) 167 Colo. 539 [448 P.2d 954], squarely supports plaintiff. There, on a cold and slushy day, water was tracked in from time to time on the stairway of the defendant's store, and defendant's employees had mopped the area prior to the accident. The plaintiff slipped and fell on the stairs, noticing a puddle of water on the steps after she landed. Judgment for the plaintiff was upheld and the court rejected the same argument made by defendant in the instant case. "The defendant has also argued that it should have had a directed verdict for the reason that there was no evidence of actual or constructive notice to it of a dangerous condition. It was known to the defendant that snow was being deposited from the feet of customers on floors and stairways near the entrances and, on days such as this, it maintained a crew of about 30 persons engaged in mopping up moisture on the floors and stairways. It was known to the defendant that the steps of the marble stairway involved were worn and became slick when wet. By reason of these facts this issue became a question for the jury." (*Id.*, at p. 956; citations omitted.)

In a subsequent discussion of *Gettman*, the Colorado Supreme Court explained that the basic notice requirement springs from the thought that a dangerous condition is somewhat out of the ordinary, but that on a day when the defendant knows that water will be tracked into the store by customers and deposited on the floor rendering it slippery, the purpose of the notice requirement is fulfilled and such evidence is enough to allow the question of negligence to go to the jury. (*Jasko* v. *F. W. Woolworth Co.* (1972) 177 Colo. 418 [494 P.2d 839, 840].)

Defendant also contends there is no substantial evidence the water was on the floor before plaintiff fell. Defendant argues that the fact plaintiff saw water on the floor after she fell will not reasonably support an inference the water was there previously. We disagree. (See *Denver Dry Goods Company* v. *Gettman, supra*, 448 P.2d at pp. 955-956.)

## PLAINTIFF'S APPEAL

■ Plaintiff contends there is no substantial evidence of contributory negligence and that the trial court erred in submitting the issue of comparative negligence to the jury. We conclude that considering all the circumstances there was sufficient evidence to submit the issue to the jury and that the jury's apportionment of the total negligence between defendant and plaintiff should be upheld under established principles of appellate review.

Dr. Silver testified on behalf of defendant that based upon a review of plaintiff's medical records in his opinion plaintiff had a weakness of the left leg and a "trick knee" prior to the accident, and that such condition was compounded by plaintiff's obesity.[4] In his opinion it was possible plaintiff's knee gave out on her to cause her fall.

This evidence is relevant not only on the issue of proximate cause but also on the issue of contributory negligence, the theory being that persons with known handicaps may have to exercise a greater degree of care in particular circumstances than other persons. (See *Garber* v. *City of Los Angeles* (1964) 226 Cal.App.2d 349, 358 [38 Cal.Rptr. 157].)

It was raining rather heavily and according to the defense witnesses plaintiff was wearing pink furry house slippers. A person in plaintiff's position might reasonably be expected to know that the floor adjacent to the mat could be wet, even without negligence on defendant's part, or that her slippers might remain wet when she reached the end of the mat. In her testimony plaintiff made no claim to having taken any special cautions in stepping from the mat to the floor. The jury might have thought plaintiff should have seen water on the floor. Under all the circumstances, we think the jury might reasonably conclude that plaintiff failed to exercise due care for her own safety.

On appeal we must resolve all conflicts in the evidence in favor of the judgment and indulge in all reasonable inferences to uphold the verdict if possible. We may not substitute our judgment for that of the jury or set aside the jury's finding if there is any evidence which under any rea-

---

[4]Dr. Silver relied upon evidence in the medical record that plaintiff suffered an injury to her left knee in 1971; had back trouble with weakness or pain radiating to the left leg in 1974; complained on July 21, 1976, of pain in the left knee, giving a vague history of the kneecap "giving out"; and complained on August 16, 1976, that her left leg went out from under her for no apparent reason.

sonable view supports the jury's apportionment of fault. (*Metzger* v. *Barnes* (1977) 74 Cal.App.3d 6, 9-10 [141 Cal.Rptr. 257]; *Rangel* v. *Graybar Electric Co.* (1977) 70 Cal.App.3d 943, 945-946 [139 Cal. Rptr. 191].)

The judgment is affirmed. The order denying defendant's motion for judgment notwithstanding the verdict is affirmed.

Kaus, P. J., and Stephens, J., concurred.