[No. G000934. Fourth Dist., Div. Three. June 16, 1986.]

STEPHANIE WILLIAMS, Plaintiff and Appellant, v.
CARL KARCHER ENTERPRISES, INC., Defendant and Respondent.

480

**COUNSEL**

Herbert Hafif, Wayne J. Austero and William C. Fundenberg, Jr., for Plaintiff and Appellant.

Huss & Crawford, Huss, Anderson, Dosch & Bailey, William W. Huss and Lowell T. Anderson for Defendant and Respondent.

**OPINION**

**SONENSHINE, J.**—Stephanie Williams was injured when she slipped and fell on the wet tile floor at a fast food establishment. A jury verdict was rendered in favor of the restaurant's owner. On appeal, Williams contends the court committed prejudicial error in refusing to instruct the jury a business proprietor has a duty to either remove a dangerous condition on its premises or warn of its presence. We agree and reverse.

### I.

The accident occurred on a Friday evening, around the dinner hour. Williams, on a break from her job at the Sears Automotive Center in South Coast Plaza, had gone to Carl's Jr. inside the mall for something to eat. She was accompanied by two coworkers.

The surface of the floor in the front section of the restaurant was made of ceramic tile; the rear dining room was carpeted. After picking up their order, Williams and her companions left the tiled area and proceeded to a

table in the rear. Ten or twenty minutes later they got up to empty their trash and, ultimately, to return to work.

As Williams crossed from the carpeted area onto the tile floor, she fell, landing on her right knee. When she got up, she noticed the side of her skirt was wet. Apparently the floor was also wet although not visibly. Williams was wearing rubber soled wedge-type shoes, about one and one-half inches in height. She was walking no differently than usual.

Williams returned to work to complete her shift. The next day, after noticing her leg was swollen, she obtained treatment at a local hospital emergency room. An infection thereafter developed, necessitating further treatment and a lengthy hospitalization.

Williams recalled that upon entering the restaurant she saw a man mopping the ceramic tile floor. Nearby were a bucket and an orange cone bearing the word "caution." When she got up to leave, she noticed the man and the bucket were gone but the cone was still there.

The employee who had done the mopping testified he was instructed by the manager to wash the floor before the dinner hour. He used three "wet signs," including a bucket which he characterized as such. On each side of the bucket were the words "caution wet floors." He used a cleaning solution consisting of about five or six gallons of water and a handful of soap powder. After he finished the job he left behind the wet signs and the bucket. When he returned to the site after the accident, he noticed the bucket had been removed; however, the other signs were still there. He recalled having performed the same task three or four times previously. He did not remember if he ever removed the excess soap between cleanings.

The restaurant manager testified it was customary to mop the floor, at management's discretion, at least once each day during operating hours. It was also customary to allow the floor to dry naturally. Contrary to the testimony of Williams and her two friends, she said business was light at the time of the accident. And although she did not observe the fall, she recalled seeing Williams as she approached the tiled area in the direction of the exit. She said Williams was chatting with one of her friends as she walked. The manager recalled the wet signs were still in place; however, she identified the area where Williams had fallen as being outside their perimeter. She assumed the floor was wet, not because it looked wet but because it had just been mopped. She had last seen the individual who had done the mopping about 15 minutes earlier. To her knowledge, no one, with the exception of a customer who spilled a drink, had ever fallen on the tile floor.

Williams's accident reconstruction expert testified he had conducted tests on the tile floor surface. In his opinion, the surface when wet was unsafe to walk on with rubber soled shoes. He recommended routine maintenance be done before or after business hours, when customers are not present. Alternatively, he suggested the floor be roped off until it is thoroughly dry and the detergent be removed with clear water to avoid soap buildup.

In closing argument, defense counsel acknowledged "[t]here is no question that the floor was wet and slippery. You put water on a ceramic tile floor, it's going to be slippery." However, it was his position Carl's "took every reasonable effort to inform the public" of this fact; that it was Williams's fault for walking into an area that was a "known, open obvious danger, and you can't stop people from doing that."

The jury was charged with the standard BAJI[1] instructions on negligence (Nos. 3.00, 3.10, 3.11, 3.12 and 3.13) and contributory negligence (No. 3.50). It was also instructed, at Carl's request, with respect to a landowner's duty to exercise ordinary care in the management of its premises.[2]

In lieu of BAJI No. 8.00, Williams requested a number of special instructions pertaining to a business proprietor's duty to remedy a dangerous condition on its premises or to warn of its existence.[3] The trial court refused

---

[1]California Jury Instructions, Civil (6th ed. 1977). All BAJI instructions hereinafter referred to are from the sixth edition.

[2]The following modified version of BAJI 8.00 was given: "The occupant of premises is under a duty to exercise ordinary care in the management of such premises in order to avoid exposing persons thereon to an unreasonable risk of harm. A failure to fulfill this duty would be negligence. This duty of care is owed only to such persons as the occupant as a reasonably prudent person under the same or similar circumstances should have foreseen would be exposed to such risk of harm. If you find that the defendant was under such a duty of care to the plaintiff, then in determining if defendant exercised such care, you should consider all the surrounding circumstances shown by the evidence."

At Williams's request, the jury was also charged with BAJI No. 8.10: "If you find that the defendant was under a duty of care to the plaintiff and that the defendant did not exercise ordinary care in the management of his property to avoid injury to the plaintiff, then in determining if plaintiff exercised ordinary care to avoid injury to himself you should consider all of the surrounding circumstances shown by the evidence."

[3]These included the following (numbering is for convenience of reference): 1. "It is the duty of a business proprietor to exercise ordinary care to keep its premises and facilities in a reasonably safe condition and to repair or replace such of said facilities which the business proprietor knows, or which in the exercise of ordinary care should know, are in a dangerous or defective condition, and which as a result thereof might reasonably expose patrons to danger or peril.

"A patron or customer exercising ordinary care has the right to assume that the premises and facilities he is invited to use are reasonably safe, and to act upon that assumption. This, of course, is true in the absence of appearances to the contrary that would caution a reasonably prudent person or invitee."

2. "Where the business proprietor knows or should know of a condition, either artificial or natural, on its premises, which it should foresee might expose its business patrons to

to give any of these special instructions, except for a portion of one of them.[4]

Williams contends the court failed to instruct on the heart of her case: a business proprietor's duty to remove a dangerous condition or *adequately* warn of its presence. Although the jury was instructed generally on the law of negligence, no reference was made to a "dangerous condition." Had the jury been properly instructed, she asserts, it could have concluded Carl's efforts were *inadequate* to fulfill its affirmative duty. She argues this is particularly true in light of the evidence she fell outside the perimeter of the signs.

## II.

At the outset, we dispose of Carl's contention Williams was not entitled to these special instructions. It suggests, in light of *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], a landowner no longer owes any special duty of care to its invitees. This argument misconstrues *Rowland's* holding.

True, the *Rowland* court rejected the trespasser-licensee-invitee classifications which had previously governed the liability of a landowner for

---

danger, the business proprietor must use ordinary care to make the condition reasonably safe, or to warn of the danger. In other words, a charge of negligence may be based on the business proprietor's failure to exercise ordinary care in remedying a defect after he discovered it, or as a man of ordinary prudence should have discovered."

3. "If a business proprietor knows or could know, in the exercise of ordinary care, of a condition on its premises which an ordinarily prudent business proprietor would recognize as an unreasonable risk to its patrons, then it is obligated to use reasonable care to remove or remedy the risky condition, and if it fails to do this it is negligence."

4. "A business proprietor, in maintaining its premises and its facilities for the use of its patrons, is bound to use ordinary care to foresee those dangers to its patrons which an ordinarily prudent business proprietor would foresee and anticipate, if any, and to use ordinary care to avoid exposing its patrons and customers to such danger."

5. "It is the duty of a business proprietor defendant to anticipate and guard against perils, inspect the premises and facilities and keep the areas in which customers walk free from conditions which might cause a person to be injured."

6. "The defendant proprietor herein was bound to exercise reasonable diligence to inspect and discover unsafe or defective conditions on its premises. It is charged with notice of such dangerous or defective conditions as reasonable inspections would have disclosed."

7. "A condition of a premises is dangerous or defective, as such term is used in these instructions, if it is such that injury may reasonably be anticipated to result from it to persons properly using the premises for the purpose intended."

8. "In determining whether defendant acted with ordinary care in the management of his property, you should consider the likelihood of injury, the probable seriousness of such injury, the burden of reducing or avoiding the risk, and his degree of control over the risk creating defect as well as all the surrounding circumstances shown by the evidence."

9. "Where the owner of a land maintains a deceptive condition that constitutes a potential danger to ordinary humanity, which might be deceived thereby into a false step with resultant injuries, he is negligent in maintaining the condition."

[4]The second paragraph of special instruction No. 1 was given.

injury occurring on its premises. ■ Instead, "[t]he proper test to be applied to the liability of the possessor of land . . . is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others, and, *although the plaintiff's status as a trespasser, licensee, or invitee may in the light of the facts giving rise to such status have some bearing on the question of liability, the status is not determinative.*" (*Id.,* at p. 119, italics added.)

■ But the decision "had less effect on the already broad scope of duties owed to invitees. This is made clear in *Beauchamp* v. *Los Gatos Golf Course* (1969) [273 Cal.App.2d 20 (77 Cal.Rptr. 914).]" (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 589, p. 2857.)

■ As stated in *Beauchamp,* "[t]he term 'invitee' has not been abandoned, nor have 'trespasser' and 'licensee.' In the minds of the jury, whether a possessor of the premises has acted as a reasonable man toward a plaintiff, in view of the probability of injury to him, will tend to involve the circumstances under which he came upon defendant's land; and the probability of exposure of plaintiff and others of his class to the risk of injury; as well as whether the condition itself presented an unreasonable risk of harm, in view of the foreseeable use of the property." (*Beauchamp* v. *Los Gatos Golf Course, supra,* at p. 25.) Thus, the court concluded, and we agree, *Rowland* "does not generally abrogate the decisions declaring the substantive duties of the possessor of land to invitees nor those establishing the correlative rights and duties of invitees." (*Id.,* at p. 27.)

### III.

■ Nonetheless, Carl's contends the trial judge properly refused Williams' proffered instructions. It claims they were repetitive, argumentative, irrelevant, prejudicial and contradictory.

True, many were extracted from various appellate opinions, a practice often criticized as tending to produce instructions which are repetitive, misleading and inaccurate statements of the law as to the particular case. (See, e.g., 59 Cal.Jur.3d, Trial, § 84, p. 579; *Sloan* v. *Stearns* (1955) 137 Cal.App.2d 289, 300 [290 P.2d 382].) ■ And "[i]t is not error to refuse instructions which are repetitious in substance and would serve only to emphasize unduly a party's theory of the case and which so far as they contain correct statements of the law are adequately covered by the instructions given. [Citation.]" (*Kraft* v. *Nemeth* (1952) 115 Cal.App.2d 50, 54 [251 P.2d 355].)

However, special instructions Nos. 1 and 2 constitute accurate statements of the law.[5] The substance of neither is adequately covered by the instructions given.

According to Williams' theory of the case, the wet tile floor, due to its slippery condition, was unsafe to walk on, irrespective of any warning to that effect.[6] Under California law, "the proprietor of a store who knows of, or by the exercise of reasonable care could discover, an artificial condition upon his premises which he should foresee exposes his business visitors to an unreasonable risk, and who has no basis for believing that they will discover the condition or realize the risk involved, is under a duty to exercise ordinary care either to make the condition reasonably safe for their use or to give a warning adequate to enable them to avoid the harm. [Citations.]" (*Bridgman* v. *Safeway Stores, Inc.* (1960) 53 Cal.2d 443, 446 [2 Cal.Rptr. 146, 348 P.2d 696]; see also *Chance* v. *Lawry's, Inc.* (1962) 58 Cal.2d 368, 373 [24 Cal.Rptr. 209, 374 P.2d 185]; *Crane* v. *Smith* (1943) 23 Cal.2d 288, 296 [144 P.2d 356]; *Beauchamp* v. *Los Gatos Golf Course, supra,* 273 Cal.App.2d 20, 27.) Williams was entitled to have the jury so instructed. BAJI No. 8.00 viewed either alone or, as we must, in conjunction with all of the instructions which *were* given (see *Gordon* v. *Aztec Brewing Co.* (1949) 33 Cal.2d 514, 519 [203 P.2d 522]), does not effectively convey the nature and extent of this duty.

Without being instructed in terms of Carl's duty to remedy or warn, the jury could not have determined if a dangerous condition existed, and if so, whether the warning was adequate to enable Williams to foresee the full extent of the hazard. Indeed, if a floor is slippery and constitutes a dangerous condition, precautionary measures may not necessarily shield the landowner from liability. (See, e.g., *Scott* v. *Alpha Beta Co.* (1980) 104 Cal.App.3d 305, 308-309 [163 Cal.Rptr. 544, 20 A.L.R.4th 511].) "When required, whether a warning is effective to give protection is a jury question. [Citation.]" (*Beauchamp* v. *Los Gatos Golf Course, supra,* 273 Cal.App.2d 20, 27.)

---

[5]The second paragraph of instructions No. 1 *was* given. See footnotes 3 and 4, *ante.*

[6]As stated in her opening brief, Williams claimed (1) she was a customer at defendant's business establishment; (2) part of the floor on the premises which patrons were induced to traverse, i.e., the ceramic tile area, was unsafe for normal walking due to its slippery condition; (3) the condition was caused by defendant's employees' customary method of mopping the tile floor with soap and allowing it to dry without removing the soap; (4) the slippery condition was the result of soap buildup which was not obvious to Williams; (5) the dangerous condition was a proximate cause of Williams' fall which resulted in her injuries; (6) defendant had a duty of care owed to Williams to correct or remove the condition, or to warn Williams sufficiently of the danger so she could avoid the harm; (7) defendant failed to fulfill its duty of due care; and (8) the failure to do so was negligence.

These statements are consistent with the allegations set forth in her complaint.

 It is of no moment none of the proposed instructions embrace the concept of "adequacy." Had the jury been properly instructed, Williams' counsel would then have had a basis upon which to argue the warning was inadequate. True, he endeavored in closing argument to inform the jury Carl's use of warning signs had nothing to do with the case; the true issue was whether the signs were adequate to caution Williams the wet floor created a hazardous condition. And in so doing, he pointed out no evidence had been produced tending to show the floor was wet to the naked eye; thus, Williams had a right to assume the floor was safe to walk on. However, without the instruction, the jury was free to conclude Carl's had satisfied its duty of ordinary care merely by attending to the placement of the signs. It might even have determined their use was gratuitous.

The duty owed by Carl's was, after all, the crux of the case. "[I]t is the duty of the court to see that jurors are guided on controlling legal principles . . . ." (7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 243, p. 250.) Its failure to do so here constitutes error.

## IV.

 The crucial question is whether the error was prejudicial, requiring reversal. (Cal. Const., art. VI, § 13.) Generally, "if it appears that error in [refusing to give a proper instruction] was likely to mislead the jury and thus to become a factor in its verdict, it is prejudicial and ground for reversal. [Citation.]" (*Henderson* v. *Harnischfeger Corp.* (1974) 12 Cal.3d 663, 670 [117 Cal.Rptr. 1, 527 P.2d 353].) "Whether a jury has been misled by an erroneous instruction or by the overall charge must be determined by an examination of all the circumstances of the case including a *review of all of the evidence as well as the instructions as a whole.* [Citations.]" (*Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 59 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878] italics added.)

 Ordinarily, in determining whether the evidence supports the verdict we must assume the jury accepted the view most favorable to the respondent. (*Henderson* v. *Harnischfeger Corp, supra,* 12 Cal.3d 663, 674.) However, "'[w]here it seems probable that the jury's verdict *may* have been based on the erroneous instruction prejudice appears and [the] court "should not speculate upon the basis of the verdict."' [Citations.]" (*Id.,* at p. 670, italics added.) "'[W]e must assume that the jury *might* have believed the evidence upon which the instruction favorable to the losing party was predicated, and that if the correct instruction had been given upon *that* subject the jury *might* have rendered a verdict in favor of the losing party.' [Citations.] Our problem in the case at bench . . . [involves] not the sufficiency of the evidence, but rather the effect on the jury of an improper

instruction." (*Id.*, at p. 674, italics added.) Viewing the matter in this light, we conclude the judgment must be reversed.

There was evidence the floor was not visibly wet. There was also evidence to support Williams' contention the accident was a result of Carl's failure to take sufficient precautionary measures. Thus, while Williams acknowledged she saw the cone just prior to the fall, the thrust of her case entailed the inadequacy of the warning. Something more was required—the floor should have been dried by hand, roped off, or cleaned before or after business hours.

The jury should have been permitted to weigh this evidence in accordance with appropriate instructions. Indeed, it could not have determined if Carl's duty had been satisfied without knowing what that duty was. ██ "Judgment obtained based upon a wrong application of law cannot stand." (*McGee v. Cessna Aircraft Co.* (1978) 82 Cal.App.3d 1005, 1019 [147 Cal.Rptr. 694].) ██ Moreover, the error cannot be discarded as nonprejudicial simply because a jury on remand *might* reach the same result. ██ "[I]t is inherently prejudicial error for a trial court to refuse to give instructions covering [a party's] theor[y] of the case which [is] supported by substantial evidence. [Citations.]" (*Ng v. Hudson* (1977) 75 Cal.App.3d 250, 261 [142 Cal.Rptr. 69].)

## V.

Because the case must be retried, we examine Williams' remaining contentions for the trial court's guidance on remand.

██ Williams claims the court erred in refusing to instruct the jury on "momentary forgetfulness." (BAJI No. 3.51.)[7] ██ ██ She does not take the position *her* conduct was irrelevant. Rather, she argues the issue of her contributory negligence,[8] if any, was a question of fact for

---

[7]This instruction provides: "Whether or not it is negligence for one to proceed into a dangerous situation of which he had previous knowledge is a question of fact. if you find that plaintiff voluntarily proceeded into a dangerous situation of which he had previous knowledge, but that he momentarily forgot the danger, such forgetfulness is not in itself contributory negligence unless under all the circumstances it shows a want of ordinary care not to have kept the danger in mind.

[8]At Carl's request, the jury was instructed "[a] proximate cause of an injury is a cause which, in natural and continuous sequence, produces the injury, and without which the injury would not have occurred." (BAJI No. 3.75.) The court refused Williams' request for BAJI No. 3.76 (1983 pocket pt.), which reads: "A legal cause of injury, damage, loss or harm is a cause which is a substantial factor in bringing about the injury, damage, loss or harm."

Although not raised by Williams, we have grave doubts as to the propriety of the proximate cause instruction. "[I]n those cases in which injury would have resulted from either of two causes operating alone, a proximate cause instruction is improper and a legal cause instruction . . . should be given." (*Hart v. Browne* (1980) 103 Cal.App.3d 947, 961-962 [163 Cal.Rptr. 356].) Here, having been instructed on proximate cause, the jury may well have been constrained from considering the possibility of comparative negligence.

the jury *even if,* due to her momentary forgetfulness, she failed to observe what may have been an obvious danger.

 "[W]hether forgetfulness of a known danger constitutes contributory negligence is a question for the trier of fact, giving consideration to the circumstances even though there is no sudden disturbance or peril confronting the plaintiff and causing the lapse of memory; to forget is not negligence unless it shows a want of ordinary care. Generally the question is one for the jury. [Citations.]" (*Austin* v. *Riverside Portland Cement Co.* (1955) 44 Cal.2d 225, 237 [282 P.2d 69].) However, it is not error for a trial court to refuse an instruction on momentary forgetfulness in the absence of evidence to that effect. (*Perrotti* v. *Sampson* (1961) 188 Cal.App.2d 238, 247 [10 Cal.Rptr. 372]; *Edgett* v. *Fairchild* (1957) 153 Cal.App.2d 734, 739 [314 P.2d 973].)

Williams acknowledges there was no sudden disturbance or peril causing a lapse of memory. Nonetheless, she claims it was for the jury to determine whether she demonstrated an absence of ordinary care. But there is no evidence she *had* a lapse of memory, whatever the cause. She saw the warning sign immediately before the fall.

In any event, this argument is inconsistent with her theory of the case. If, despite the warning, the floor was unsafe to walk on due to its slippery condition *and* the condition was not obvious to the naked eye, whether or not she "momentarily forgot" is immaterial.

 Finally, the jury was instructed any act or omission of Carl's employees is the act or omission of Carl's. (BAJI No. 13.30.) But Williams also requested an instruction regarding the imputation to Carl's of its employees' knowledge of a dangerous condition. (BAJI No. 8.21.) This instruction is appropriate and should have been given.

The judgment is reversed and the matter is remanded to the trial court for a new trial in accordance with the views expressed herein.

Crosby, Acting P. J., and Wallin, J., concurred.