[No. E006305. Fourth Dist., Div. Two. Sept. 26, 1990.]

JAMES P. OSBORN et al., Plaintiffs and Appellants, v.
MISSION READY MIX, Defendant and Respondent.

**COUNSEL**

Richard A. Love for Plaintiffs and Appellants.

Smith & Peckham, Charles A. Peckham and Harry C. Carpelan for Defendant and Respondent.

**OPINION**

**TIMLIN, J.—**

### INTRODUCTION

James P. Osborn and Beverly Osborn (plaintiffs) sued Mission Ready Mix (defendant) for damages for personal injuries and loss of consortium after James was injured when he fell on a construction site owned and controlled by defendant. Plaintiffs' complaint alleged that defendant negligently owned, maintained and operated the premises where James was injured, and also alleged that defendant willfully or maliciously failed to

guard or warn against a dangerous condition, use, structure or activity on the premises.

Plaintiffs asked for compensatory damages as well as for exemplary damages of $100,000.

Defendant answered, denying the allegations of the complaint, and raising various affirmative defenses, including: (1) that plaintiffs' injuries were proximately caused by their own careless, reckless, negligent or unlawful conduct; (2) that plaintiffs were contributively negligent; and (3) that plaintiffs had knowingly assumed the risk involved.

After a five-day trial, during which defendant took the position that James's injuries had not occurred on its premises, as well as the position that even if they had, defendant had not been negligent because the allegedly dangerous condition of the property was open and obvious, the jury returned a special verdict stating that although James had been injured on defendant's premises, defendant had not been negligent in the management of the premises in question. Judgment in favor of defendant was entered.

Plaintiffs made a motion for a new trial. Their motion was denied. They then filed this appeal, and now contend that the judgment must be reversed for the following reasons: (1) the trial court committed prejudicial error by requiring James to respond, on cross-examination, to questions which they contend required him to express an improper lay opinion related to ultimate issues in the case; (2) the trial court committed prejudicial error by instructing the jury with BAJI No. 8.32, as modified at defendant's request; (3) the trial court erred by refusing to give the jury the special instructions requested by plaintiffs; and (4) there is no substantial evidence to support the jury's conclusion that defendant was not negligent in its management of the premises.

After reviewing the record and considering each of plaintiffs' contentions, as discussed below, we have concluded that there was, in fact, prejudicial instructional error, and that the judgment in favor of defendant should be reversed.

## FACTS

The following statement of facts is taken almost verbatim from plaintiffs' opening brief, defendant implicitly having agreed that plaintiffs' statement of facts is correct for purposes of this appeal by failing either to contradict plaintiffs' statement of facts or to provide us with its own statement of facts.

James P. Osborn was 48 years old in September 1984, when the accident occurred. He had been married to Beverly Osborn for almost 30 years. He had 28 years' experience as a driver, with 4 years' experience on a cement truck and 20 years' experience driving a "cement train," i.e., a tractor and 2 trailers used to deliver cement and fly ash to ready mix concrete plants. He had worked for Downey Ready Mix for 15 years, until it went out of business, and then, in April or June of 1984, he took a nonunion job with Fiske Trucking Company as a cement train driver while waiting for an opening at Owl Trucking, a union employer.

Fiske Trucking Company, an independent trucking company, delivered fly ash and cement to defendant. James's responsibility as a driver of Fiske's cement train was to deliver his load of fly ash and cement into defendant's silos and to help clean up a spill if there was a problem during the unloading process.

Defendant's general procedure for handling deliveries of fly ash and cement was for the cement train driver to pull onto the lot, stop his cement train near the conveyor belt behind the silos, walk to the dispatch office and get permission from the batch plant operator to unload his cargo into the silos. The operator would then sign the driver's bill of lading, and tell the driver into which silo to unload. The driver would then walk back to his rig, pull it next to the ramp in front of the silos, connect a hose from the silo to one of the trailers, and then unload the fly ash or cement by blowing the material into the silo with air pressure from a unit on the truck.

In September 1984, Willis Overgaauw, defendant's president, decided to remove the concrete ramp that was in front of the silos. This ramp was 60 feet long, about 16 feet wide, and about 1½ feet high. It consisted of six inches of concrete on top of dirt. On September 24, Harber Companies, Inc., arrived and broke up the ramp with a backhoe to which a pointed spike was attached. On September 26, a concrete sawing contractor cut the concrete pavement around the area where the ramp had been located.[1]

Defendant continued to operate its plant, and to take delivery of fly ash and cement while the demolition and construction in the ramp area was in progress. On September 27, plaintiff picked up a load of fly ash for delivery to defendant's plant. He arrived at defendant's premises, parked, received permission to unload, and moved his truck next to the former ramp area, which was now a 60-foot by 12-foot area of 1 foot to 1½ feet of dirt mixed with broken pieces of concrete. Dirt and debris were scattered along the

---

[1] There was some discrepancy in the testimony about the removal of the ramp and the amount of time spent breaking it up. This discrepancy is not relevant on appeal.

edge of this area. James got out of his tractor, and proceeded to attach the free end of the hose leading to the cement silo to his rear trailer. He then walked across the rubble to the cement silo to disconnect the hose from that silo and attach it instead to the fly ash silo.[2]

The hose, which was 25 to 30 feet long, with a 4-inch diameter, was heavy. In order to pull it over to the fly ash silo, James grabbed it with both hands and pulled it by walking backwards across the dirt/rubble area, looking over his shoulder to see where he was going. As he pulled the hose toward the fly ash silo, his right heel hit an embedded piece of concrete and he fell. The end of the hose, which was fitted with metal fittings, hit him in the stomach and his lower back struck another piece of rubble.

Thereafter, various events occurred which are not relevant to the issues on appeal.[3] Plaintiff ultimately underwent an operation for a stomach hernia allegedly caused by being struck in the stomach by the pipe, and a lumbar laminectomy and fusion for a left lateral herniated disc at L4/5 with compression of the L5 nerve root. There was testimony at trial that he could only walk with the aid of a cane, and that he would require future surgery on his lower back. His past and future medical bills, as well as his estimate of his past and future wage loss, constituted a significant amount of money.

## DISCUSSION

*(1)   The Trial Court Did Not Commit Prejudicial Error by Requiring James to Respond, on Cross-examination, to Certain Questions Related to the Condition of the Premises*

Plaintiffs contend that the trial court erred by requiring James to testify, over his attorney's objection, in a manner which constituted "impermissible

---

[2] Defendant contended at trial that plaintiff's version of how the accident occurred was patently false, because plaintiff should have been able to use the hose already attached to the fly ash silo rather than having to drag the hose from the cement silo over to the fly ash silo.

Although defendant raised this factual conflict at oral argument, it apparently did not consider this point to be relevant to the appeal because it did not mention it in its respondent's brief. This conflict is, in fact, irrelevant, because plaintiff's choice of hoses would, if anything, relate to his contributory negligence, not to the issue of defendant's own negligence. The instructional error challenged on appeal, in turn, goes to the issue of negligence, not contributory negligence. For a discussion of contributory negligence in the context of an employee injured on the job, see *Gyerman* v. *United States Lines Co.* (1972) 7 Cal.3d 488, 500-506 [102 Cal.Rptr. 795, 498 P.2d 1043].

[3] As noted above, defendant does not disagree with the facts as represented by plaintiffs on appeal. However, defendant took the position at trial that James's injuries did not occur on its premises, but elsewhere. The omitted facts are relevant to this "phantom accident" theory, as it was called by plaintiffs. However, the jury specifically found, as its response to the first question presented by the special verdict form, that plaintiff had in fact incurred his injuries on defendant's premises.

lay opinion" on "the ultimate issues of the case," i.e., to testify whether the condition of the former ramp area was "open and obvious," and whether the condition of that area was "unreasonable."

The specific testimony said to constitute such error follows: "Q: [By defendant's attorney] Was the condition open and obvious to you?

"[Plaintiffs' attorney]: Objection, calls for conclusion.

"The Court: Objection overruled.

"Q: [by defendant's attorney] Was the condition open and obvious to you?

"A: I did see the dirt and what you call rubble there.

"Q: The answer to my question is, yes, it was open and obvious?

"A: Yes.

". . . . . . . . . . . . . . . . . .

"Q: [By defendant's attorney] And before you walked backwards along this section, did you look to make sure it was safe?

"A: Yes, I checked it out.

"Q: And it appeared safe to you?

"A: Yes, it did.

"Q: If it was an unreasonable condition, you would not have tried to walk across it as many times as you did, would you?

"[Plaintiffs' attorney]: Objection, calls for legal conclusion.

"[Defendant's attorney]: I don't believe—

"The Court: Objection overruled.

"[James]: Well, when they tell you to unload, you unload.

"[Defendant's attorney]: Miss Reporter would you read back my question, please.

"(Whereupon the question was read.)

"[James]: I went across because I had to unload."

█   We first consider whether it was error to allow James to testify that the condition of the former ramp area was "open and obvious" to him. Plaintiffs argue that this was an impermissible lay opinion, and that the question called for a conclusion, rather than a recitation of the facts.

Evidence Code section 800 provides, "If a witness is not testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is permitted by law, including but not limited to an opinion that is:

"(a) Rationally based on the perception of the witness; and

"(b) Helpful to a clear understanding of his testimony."

█   " 'The true rule [as to the admissibility of lay witness opinion testimony] is simple and, so far as this state is concerned, well established: to permit, or to refuse to permit, such questions is a matter resting largely in the discretion of the trial court, which discretion will not here be reviewed unless it is made plain that the court's ruling in admitting the evidence has worked an injury. Generally speaking, the admission of the answer to such a question cannot work an injury where a fair latitude upon cross-examination is allowed, for under such cross-examination the facts are certain to be adduced. It will be found frequently that an appellate tribunal upholds the rulings of the trial court in sustaining an objection to such questions, but the cases are far less numerous where it has felt compelled to reverse the inferior tribunal for permitting them.' " (*Burke* v. *City & County of San Francisco* (1952) 111 Cal.App.2d 314, 319-320 [244 P.2d 708], quoting *Nolan* v. *Nolan* (1909) 155 Cal. 476, 480-481 [101 P. 520]. See also the discussion in *People* v. *Otis* (1959) 174 Cal.App.2d 119, 126-128 [344 P.2d 342] about the development of the opinion rule and the discretion vested in the trial court to admit or exclude opinion testimony.)

As noted above, opinion testimony by a lay witness is admissible if it is based on the witness's perception and helpful to a clear understanding of the witness's testimony. Opinion testimony of a lay witness may be particularly helpful when the matters observed by the witness may be too complex or subtle to enable the witness accurately to convey them without resorting to the use of conclusory descriptions. (*Eger* v. *May Department Stores* (1953) 120 Cal.App.2d 554, 558 [261 P.2d 281].) Put another way, " ' "Where the facts concerning [the] condition [of areas and objects] cannot be made palpable to the jurors so that their means of forming opinions are

practically equal to those of the witnesses, opinions of such witnesses may be received, accompanied by such facts supporting them as they may be able to place intelligently before the jury." ' " (*Id.* at p. 559, quoting *Manney* v. *Housing Authority* (1947) 79 Cal.App.2d 453, 460-461 [180 P.2d 69].)

Thus, a lay witness may express an opinion that a person was "drunk" (*People* v. *Garcia* (1972) 27 Cal.App.3d 639, 643, fn. 3 [104 Cal.Rptr. 69]), or that people engaged in a discussion were "angry" (*People* v. *Deacon* (1953) 117 Cal.App.2d 206, 210 [255 P.2d 98]), or that an impact was strong enough to jar a passenger from a seat (*Healy* v. *Visalia etc. R. R. Co.* (1894) 101 Cal. 585, 590 [36 P. 125]), or that someone appeared to be "trying to break up a fight." (*People* v. *Harris* (1969) 270 Cal.App.2d 863, 872 [76 Cal.Rptr. 130].)

██ Here, whether the nature of the potential danger was obvious or not was a matter which could best be described to the jury by way of opinion testimony. A recitation of the size of the area, the depth and quality of the dirt, the size of the concrete pieces and whether and in what proportion they were totally exposed, completely hidden, or partially embedded in the dirt could be made, but, in our opinion, such facts alone would not make the obviousness of the risk involved so palpable to the jury that its means of forming an opinion would be practically equal to those of the witness. Thus, the trial court did not err when it overruled plaintiffs' objection to the admissibility of James's opinion as to the obviousness of the area's "condition."[4]

██ We next consider whether the testimony elicited in response to defendant's question, "If it was an unreasonable condition you would not have tried to walk across it as many times as you did, would you?" was inadmissible opinion testimony on an ultimate issue of fact.

We first note that the actual objection made at trial was that the question called for a legal conclusion. We agree. The question required James to agree that the condition was "not unreasonable," i.e., reasonable, because he had walked across it several times. This was, as plaintiffs assert, the ultimate issue of fact to be decided by the jury, which was instructed that defendant owed a duty to the employees of its suppliers to exercise reasonable care to keep its premises in a "reasonably safe condition." Thus, as plaintiffs asserted at trial, the question called for a legal conclusion. As noted above, if a witness is not testifying as an expert, his testimony in the

---

[4] As defendant also notes, the testimony that the condition was open and obvious is not simply a statement of opinion, but, because it was elicited from James, a statement of sensory observation—that James was able to see and appreciate the nature of the area he was required to cross.

form of an opinion is limited to only such opinions as are based on his own perception of the facts and which is helpful to a clear understanding of his testimony, except in certain situations not applicable here. (See 2 Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar 2d ed. 1982) § 29.1, at pp. 975-983.) James's opinion as to the "reasonableness" of the condition of defendant's premises was not helpful to a clear understanding of his testimony, and invaded the province of the jury, which was to determine the reasonableness of both parties' conduct.

Although the objection to this question was overruled, when it should have been sustained, no prejudice occurred. James did not answer the question, i.e., he did not state an opinion that the condition was reasonable or unreasonable. Instead, he answered, "Well, when they tell you to unload, you unload," and "I went across because I had to unload," thus giving his attorney a basis on which to emphasize to the jury the rule contained in BAJI No. 3.40, that "When a person's lawful employment requires that he work in a dangerous location or a place that involves unusual possibilities of injury, or requires that in the line of his duty he take risks which ordinarily a reasonably prudent person would avoid, the necessities of such a situation, insofar as they limit the caution that he can take for his own safety, lessen the amount of caution required of him by law in the exercise of ordinary care."

Having concluded that the elicitation of the above-noted testimony was not prejudicial error, we next consider whether the giving of BAJI No. 8.32 was erroneous, i.e., whether, under the facts of this case, it may have misled the jury. We shall then consider whether, if it was indeed misleading, the error "resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) ■ Only when an error has resulted in a miscarriage of justice will it be deemed to be prejudicial so as to require reversal. (*Ibid*.) A miscarriage of justice exists if, in the absence of the error, a result more favorable to plaintiffs probably would have occurred. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) The probability of a more favorable result, in turn, in a case involving the giving of an incorrect instruction, must be measured by reference to various factors set out in such California Supreme Court cases as *LeMons* v. *Regents of University of California* (1978) 21 Cal.3d 869 [148 Cal.Rptr. 355, 582 P.2d 946] and *Henderson* v. *Harnischfeger Corp.* (1974) 12 Cal.3d 663 [117 Cal.Rptr. 1, 527 P.2d 353], as discussed at pages 123 through 127, *post*.

(2) *It Was Error to Instruct the Jury with BAJI No. 8.32 as Modified*

■ Plaintiffs contend that the trial court erred by instructing the jury with a modified version of BAJI No. 8.32, which, as modified, contained an

improper explanation of the law related to defendant's liability for injury caused by an obvious or reasonably observable danger on the premises. We agree.

The jury was instructed, over plaintiffs' objections,[5] as follows: "A business proprietor such as Mission Ready-Mix which purchases materials from a supplier, owes a duty to the employees of the supplier to exercise reasonable care to keep the premises over which the proprietor has control in a reasonably safe condition and to provide a safe place for such employees to make their deliveries.

"It is also the duty of the proprietor to warn such employees of any danger which is not obvious and which is known to the proprietor or discoverable by it in the exercise of ordinary care. *However, a business proprietor is not the insurer of the safety of the employees of a supplier and cannot be held liable for an injury resulting from a danger which was obvious or which should have been observed in the exercise of ordinary care.* If a danger is open and obvious, the business proprietor is not charged with a duty to warn employees of a supplier who come on its premises." (Italics added.)

This instruction, which was based on BAJI No. 8.32, was revised by defendant with reference to *Williams* v. *Carl Karcher Enterprises, Inc.* (1986) 182 Cal.App.3d 479, 485-488 [227 Cal.Rptr. 465] and *Elder* v. *Pacific Tel. & Tel. Co.* (1977) 66 Cal.App.3d 650, 661-662 [136 Cal.Rptr. 203].[6]

---

[5] The trial court engaged in a lengthy and careful discussion of the applicable law with the attorneys for both parties. After reading through this discussion, it seems that the trial court and plaintiffs' attorney were both correct as to the state of the relevant law, and that the error arose during the drafting process, when the qualifying statement that a business proprietor could not be liable for injury caused *by failure to warn* of an obvious or reasonably observable danger was somehow separated into two separate sentences, so that the nonliability for injury caused by an obvious or reasonably observable danger became an absolute statement of the law, rather than one qualified by reference to the duty to warn.

[6] BAJI No. 8.32, in its unrevised-by-defendant form, states: "A general contractor owes to the employees of a subcontractor a duty to exercise reasonable care to keep the premises over which the general contractor has control in a reasonably safe condition and to provide a safe place for such employees to work. It is also the duty of a general contractor to warn such employees of any danger which is not obvious and which is known to the general contractor or discoverable by him in the exercise of ordinary care."

Noticeably absent from the original version is any statement to the effect that a business proprietor cannot be liable for an injury caused by a danger which was obvious or which should have been observed in the exercise of ordinary care.

Unfortunately, however, the Comment to BAJI No. 8.32 contains such a statement, for which *Elder* is cited: "The general contractor is not an insurer of the safety of the employees of a subcontractor and cannot be held liable for an injury resulting from a danger which was

After reviewing *Williams* and *Elder*, and other cases related to this issue, we conclude that the instruction, to the extent that it states categorically that a business proprietor cannot be held liable for an injury resulting from a danger which was obvious or which should have been observed in the exercise of ordinary care, is incorrect.

In *Williams*, the plaintiff slipped and fell on wet ceramic tile in a restaurant. The jury was instructed on BAJI No. 8.00, as modified at defendant's request,[7] and on BAJI No. 8.10, at plaintiff's request.[8] The trial court refused to give special instructions requested by plaintiff related to a proprietor's duty to remedy a dangerous condition on its premises or to warn of its existence.[9]

Plaintiff lost her case, and appealed. The reviewing court reversed, concluding that the trial court had committed prejudicial error by refusing to instruct on the requested instructions.

---

obvious or which should have been observed in the exercise of ordinary care." As discussed *infra*, this is not a correct statement of the law.

[7] " 'The occupant of premises is under a duty to exercise ordinary care in the management of such premises in order to avoid exposing persons thereon to an unreasonable risk of harm. A failure to fulfill this duty would be negligence. This duty of care is owed only to such persons as the occupant as a reasonably prudent person under the same or similar circumstances should have foreseen would be exposed to such risk of harm. If you find that the defendant was under such a duty of care to the plaintiff, then in determining if defendant exercised such care, you should consider all the surrounding circumstances shown by the evidence.' " (*Id.* at p. 485, fn. 2.)

[8] " 'If you find that the defendant was under a duty of care to the plaintiff and that the defendant did not exercise ordinary care in the management of his property to avoid injury to the plaintiff, then in determining if plaintiff exercised ordinary care to avoid injury to himself you should consider all of the surrounding circumstances shown by the evidence.' " (*Id.* at p. 485, fn. 2.)

[9] These included, among others, "1. 'It is the duty of a business proprietor to exercise ordinary care to keep its premises and facilities in a reasonably safe condition and to repair or replace such of said facilities which the business proprietor knows, or which in the exercise of ordinary care should know, are in a dangerous or defective condition, and which as a result thereof might reasonably expose patrons to danger or peril.

" 'A patron or customer exercising ordinary care has the right to assume that the premises and facilities he is invited to use are reasonably safe, and to act upon that assumption. This, of course, is true in the absence of appearances to the contrary that would caution a reasonably prudent person or invitee.

"2. 'Where the business proprietor knows or should know of a condition, either artificial or natural, on its premises, which it should foresee might expose its business patrons to danger, the business proprietor must use ordinary care to make the condition reasonably safe, or to warn of the danger. In other words, a charge of negligence may be based on the business proprietor's failure to exercise ordinary care in remedying a defect after he discovered it, or as a man of ordinary prudence should have discovered.' " (*Id.* at pp. 485-486, fn. 3.)

The trial court only gave the second paragraph of special instruction No. 1. (*Id.* at p. 486, fn. 4.)

Specifically, the court noted that plaintiff's theory of the case was that the wet floor, due to its slippery condition, was unsafe to walk on, irrespective of any warning to that effect (182 Cal.App.3d at p. 488), and that the failure to give plaintiff's instructions on the proprietor's duty to *remedy* a dangerous condition *or* to *warn* of the danger, deprived her attorney of the basis upon which to argue *either* that the nature of the danger involved required defendant to remedy the danger (as by hand-drying the area, cordoning it off until it had dried, or cleaning the floors only before or after business hours) (*id.*, at p. 490) *or* that the warning used by defendant ("wet" signs) was an inadequate warning of the actual danger involved, given that the floor was not only wet but quite slippery. (*Id.*, at pp. 484-485, 488-489.)

Thus, *Williams* did *not* involve the giving of an instruction that a business proprietor is not liable for injury caused by an obvious or easily observable danger, but instead held that it was error not to give an instruction on the premises owner's duty to remedy or to warn of a dangerous condition.

In *Elder* v. *Pacific Tel. & Tel. Co., supra*, 66 Cal.App.3d 650, the other case relied upon by defendant for its modification of BAJI No. 8.32, two employees of a subcontractor sued a building proprietor and a general contractor for injuries they sustained after one of them, while standing on an elevated concrete slab, cut the last of the rods supporting the platform before a skiploader had been moved into place to support the slab's weight. The plaintiffs' suit was premised on the peculiar risk doctrine, on the contractor's common law duty, as an inviter, to provide a safe place to work, and on the statutory duty of an "employer" to make similar provision for its employees' safety as required by relevant Labor Code sections.

At the close of plaintiffs' case, the trial court granted the defendants' motion for nonsuit. Plaintiffs appealed, and the reviewing court affirmed the judgment in favor of defendants, concluding that there was no evidence to support plaintiffs' theories of liability, because (1) the only hazard involved was one of the plaintiffs' own making (the slab having been perfectly sound until plaintiffs cut the support out from under it, and themselves), and (2) there was no evidence that either defendant exercised, or had the power to exercise, on-the-job direction of the operative details of the work, and thus there was no evidence that they were "employers" within the meaning of the relevant Labor Code sections.

It is important to note that *Elder*, given its procedural posture, is *not* a case in which any holding relates to what jury instructions are proper or improper in a premises liability action. Thus, although *Elder* states that "The general contractor clearly is not an insurer of the safety of the employees of a subcontractor and cannot be held liable for an injury resulting from

a danger which was obvious or which should have been observed in the exercise of ordinary care[] (*Souza v. Pratico, supra,* at p. 657[])" (66 Cal.App.3d at p. 661), this pronouncement of law was made under circumstances which did not require the court to consider whether this statement was in fact accurate under all possible theories which might be advanced by a plaintiff whose injury was caused by an "open and obvious danger." Furthermore, as noted by the *Elder* court, the case before it did not even involve an *existing* danger, obvious or not, because plaintiffs had created their own hazard by removing the supporting rods themselves. (*Id.* at p. 662.) Therefore, the above-noted proposition of law in *Elder,* that a contractor cannot be liable for an injury caused by an obvious or observable danger, is simply *dicta,* and, as discussed in more detail below, erroneous dicta.

There is yet another problem with defendant's reliance on *Elder* as authority for its modification of BAJI No. 8.32. *Elder* cites *Souza v. Pratico* (1966) 245 Cal.App.2d 651, 657 [54 Cal.Rptr. 159] for the proposition that there can be no liability for injuries caused by an open or observable danger. *Souza,* in turn, cites *Florez v. Groom Development Co.* (1959) 53 Cal.2d 347, 355 [1 Cal.Rptr. 840, 348 P.2d 200] for this same proposition. A review of the *Florez* case indicates that it, too, is not a case in which the propriety or completeness of jury instructions was an issue. More importantly, however, *Florez* simply did not hold, as *Souza* would seem to indicate, that a contractor can *never* be liable for injury caused by an obvious or observable danger. Instead, *Florez* held that when a worker, whose work requires him or her to encounter a danger which is obvious or observable, is injured, "[*t*]*he jury* [*is*] *entitled to balance the* [*plaintiff's*] *necessity against the danger, even if it be assumed that it was an apparent one. This* [*is*] *a factual issue.* [Citations.]" (*Id.* at pp. 358-359, italics added.) In other words, under certain circumstances, an obvious or apparent risk of danger does not automatically absolve a defendant of liability for injury caused thereby.

In *Florez v. Groom Development Co., supra,* 53 Cal.2d 347, a subcontractor's employee sued the general contractor for injuries sustained after the employee fell from a plank into a ditch separating a water faucet from an adjoining area. The evidence showed that the plank might have been too short, or too narrow, to allow safe passage, and defendant contractor argued that such a condition, being readily apparent, could not form the basis for any liability. There was also evidence that the fall might have been caused by another defect, one which was not apparent, that being that the soil of the bank against which one end of the plank was braced was of a consistency which was not safe if pressure was placed upon it.

The *Florez* court concluded, even assuming that the accident was caused by the readily apparent risk created by a too short or narrow plank, that:

"It is . . . the law that a workman on the job, doing the job he was hired to do, is not required to exercise the same quantum of care that may be required of other invitees. As was said in *Austin* v. *Riverside Portland Cement Co.*, 44 Cal.2d 225, at page 239 [282 P.2d 69]: ' " . . . where a person must work in a position of possible danger the amount of care which he is bound to exercise for his own safety may well be less by reason of the necessity of his giving attention to his work than would otherwise be the case. [Citations.]

"In the instant case, [defendants] assume that their negligence, if any, was in using a plank that was too narrow or too short, and contend that these defects were clear and obvious, and should have been seen by [plaintiff]. It is urged that the very facts relied upon by [plaintiff] to support the inference of negligence also demonstrate that [plaintiff] was contributively negligent. *This argument proceeds on the theory that the quantum of care required of the invitor and invitee are identical. That is not the law.* Even if the only negligence involved was in furnishing a plank that was too short or too narrow, or both, the question as to whether [plaintiff] as a workman-invitee acted reasonably in using it was a question of fact for the jury. The cases already cited support this principle. It must not be forgotten that [plaintiff's] duties as an employee required him, in the course of his employment, to use water, and, so far as he knew, the faucet in question was the only place where water was available. The dangerous plank was the only means furnished to reach that faucet. The jury was entitled to balance the [plaintiff's] necessity against the danger, even if it be assumed that it was an apparent one. This was a factual issue. [Citations.]" (53 Cal.2d at pp. 357-359, italics added.)

The rule stated in *Florez*, that an obvious or apparent risk of danger does *not* automatically absolve a defendant of liability for injury caused thereby, though couched in terms of the duties owed to "invitees," was not abrogated by the decision in *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], which held that a plaintiff's status as a trespasser, licensee or invitee was not determinative of the landowner's liability, but merely had some bearing on that issue. (*Beauchamp* v. *Los Gatos Golf Course* (1969) 273 Cal.App.2d 20, 27 [77 Cal.Rptr. 914].) A review of *Beauchamp* makes it even more apparent that the obvious nature of a danger is not, in and of itself, sufficient to establish that the owner of the premises on which the danger is located is not liable for injuries caused thereby, and that although obviousness of danger may negate any duty to warn, it does not necessarily negate the duty to remedy.

In *Beauchamp*, plaintiff, a golfer, slipped and fell on a concrete walkway. She was wearing worn golf shoes, and there was another, apparently safer,

means of access to the course. Defendant golf course asserted, as defenses, contributory negligence by plaintiff and the lack of any duty on its part to warn of an obvious danger. The trial court granted a nonsuit in favor of defendant. The plaintiff appealed.

After noting that the peril before it consisted of plaintiff's worn golf shoes, which did not provide traction on a "physically perfect concrete walkway," (273 Cal.App.2d at pp. 28-29), and further noting that the trial court "in granting the nonsuit undoubtedly concluded that the danger involved in walking on the concrete with golf spikes was obvious, and should have been apparent to [plaintiff] as an experienced golfer, in the exercise of reasonable care," (*id.* at p. 31), the appellate court nonetheless concluded that the nonsuit was improperly granted.

"Under *Rowland* v. *Christian, supra,* we are impelled to conclude that the obvious nature of the risk, danger or defect under (1) *supra,*[10] can no longer be said *per se* to abridge the invitation given by the possessor of land, or to derogate his duty of care, so as to make his liability solely a matter of law to be determined on a nonsuit. By that decision, this matter of law for the court is transmuted to a question of fact for the jury; namely, whether a possessor of land *even in respect to the obvious risk has acted reasonably in respect to the probability of injury to an invitee*; and whether or not the invitee used the property reasonably in full knowledge of any obvious risk entering into a subsequent injurious incident. [Citations.]

"Reviewing the evidence, we cannot say that with [plaintiff's] previous unfamiliarity with the veranda, and the absence of prior experience in walking with spikes upon it, there was an unequivocal acceptance of the risk; or that the danger of doing so was so well-known and apparent to her, that the 'visible defect rule' was applicable. The jury may charge her with contributory negligence [citation] but the question of her appreciation of the risk, or her imputed knowledge of it, is not so overwhelming as to properly permit a nonsuit. Initially, in view of the invitation to use the walkway, she was entitled to consider it reasonably safe. [Citations.] This, of course, is to be modified by what she knew or ought reasonably to have known, about the risk." (273 Cal.App.2d at pp. 33-34, italics added.)

---

[10]The "(1) *supra,*" referred to by the *Beauchamp* court was one of three doctrines it discussed before reaching this final conclusion. The doctrine referred to as "(1)" was the doctrine that "Where the condition or danger is obvious, there is *no duty* to specially guard or warn against it. Hence, an injury to the user of the premises from an obvious characteristic produces no liability against the possessor of the land. Sometimes this has been defined in terms of the invitation, which is to use the premises subject to the obvious risks posed either by the physical condition or in the contemplated manner of use of the premises in that physical condition. [Citation.]" (273 Cal.App.2d at pp. 31-32, original italics.)

The reviewing court then pointed out that upon reversal, the defendant was free to urge plaintiff's negligence as a defense to liability, and that the jury would then be free to "balance the practical necessity, if any, of the use of the cement walkway against plaintiff's knowledge or notice of the hazard of using it. [Citations.]" (273 Cal.App.2d at p. 35.)[11]

The unspoken but operative principle in *Beauchamp*, as well as in *Florez*, is foreseeability: it is foreseeable that even an obvious danger may cause injury, if the practical necessity of encountering the danger, when weighed against the apparent risk involved, is such that under the circumstances, a person might choose to encounter the danger. The foreseeability of injury, in turn, when considered along with various other policy considerations such as the extent of the burden to the defendant and consequences to the community of imposing a duty to remedy such danger (see *Johnson* v. *County of Los Angeles* (1983) 143 Cal.App.3d 298, 308, fn. 5 [191 Cal.Rptr. 704]), may lead to the legal conclusion that the defendant "owes a duty of care 'to all persons who are foreseeably endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous.'" (*Id.* at pp. 307-308, quoting *Rodriquez* v. *Bethlehem Steel Corp.* (1974) 12 Cal.3d 382, 399 [115 Cal.Rptr. 765, 525 P.2d 669].)

It is thus apparent that the statements made in *Elder* v. *Pacific Tel. & Tel. Co., supra,* 66 Cal.App.3d 650, 657 and *Souza* v. *Pratico, supra,* 245 Cal.App.2d 651, 657, to the effect that a contractor or possessor of land cannot be liable for an injury caused by an obvious or observable danger, were not only unnecessary *dicta* in those cases, but were erroneous statements of the law, veritable shoals in the murky sea of duty, *because they purport to set forth a rule of liability without reference either to duty or to foreseeability of injury.*[12] Liability cannot be assessed without reference to

---

[11] The *Beauchamp* court also pointed out that whatever approach defendant adopted to argue that plaintiff's injury was the result of her own negligence or assumption of the risk, various other "invitor-invitee doctrines" still applied, also not having been abrogated by *Rowland* v. *Christian.* Among the doctrines it pointed out as being unabrogated were the following, of particular relevance to this case: "(c) the doctrine that necessity may make the invitee's use of property, in spite of its known danger, no breach of the user's duty of ordinary care. [Citation.]

"(d) the doctrine that whether to choose to travel over a known unsafe way where a safe one is available is negligence is to be determined by the trier of fact. [Citations.]

". . . . . . . . . . . . . . . . . . . .

"(f) the doctrine that the possessor of land is not an insurer of the safety of its users. [Citations.]" (*Id.* at pp. 35-36.)

[12] The statements in *Elder* and *Souza* are *particularly* likely to mislead a harried trial court engaged in the process of determining proper jury instructions in premises liability cases, set out as they are in neat comments and headnotes, with no indication in subsequent citations to them that they are erroneous (because they fail to specify that a contractor or possessor of land may, under certain circumstances, be liable for injuries caused by a *failure to remedy* an obvious or observable danger *if "harm was foreseeable despite the obvious nature of the*

duty; unless there is a breach of duty, there can be no tort liability. Duty, in turn, as noted above, depends upon various policy considerations, the most important of which is the foreseeability of injury to another. (See *Johnson* v. *County of Los Angeles, supra,* 143 Cal. App.3d 298, 307-308, 308, fn. 5.) Thus, although the obviousness of a danger may obviate the duty to *warn* of its existence, if it is *foreseeable* that the danger may cause injury despite the fact that it is obvious (e.g., when necessity requires persons to encounter it), there may be a duty to *remedy* the danger, and the breach of that duty may in turn form the basis for liability, if the breach of duty was a proximate cause of any injury.

■   Having determined that the giving of BAJI No. 8.32 as modified was erroneous, we now consider whether such error was prejudicial, i.e., whether the jury would probably have reached a different result in the absence of such error. We consider the possible prejudicial effect by reviewing the five factors set out in *LeMons* v. *Regents of University of California, supra,* 21 Cal.3d 869, 876.

(3)   *The Prejudicial Effect of the Erroneous Instruction*

■   In deciding whether a particular jury instruction misled the jury, and whether its misleading effect was so prejudicial as to require reversal, we are required to review all circumstances of the case, including the evidence and the other instructions given. (*Maupin* v. *Widling* (1987) 192 Cal.App.3d 568, 572-573 [237 Cal.Rptr. 521].) However, there are no precise formulas to follow. (*Henderson* v. *Harnischfeger Corp., supra,* 12 Cal.3d 663, 670-671.)   ■   The factors to be considered include the degree of conflict in the evidence on the critical issues; whether respondent's arguments to the jury may have contributed to the misleading effect; whether the jury requested a rereading of the instructions; the closeness of the jury's verdict; and the effect of other instructions in remedying the error. (*LeMons* v. *Regents of University of California, supra,* 21 Cal.3d 869, 876.) If, after consideration of such factors, and such other factors as may be relevant in a particular case, there is a probability that an error in instruction misled the jury, and that the correct instruction might have resulted in a verdict more favorable to the appellant, the judgment should be reversed. (*Henderson* v. *Harnischfeger Corp., supra,* 12 Cal.3d 663, 673-674.)

---

*danger.*" (6 Witkin, Summary of Cal. Law (9th ed. 1987) Torts, § 930, pp. 301-302, italics added, and see cases cited therein.)

*a) The Degree of Conflict on the Evidence of Whether the Danger Which Caused James's Injury Was Obvious or Readily Observable, Whether Harm to Him From Such Danger Was Foreseeable Despite the Obviousness of the Danger, and on Whether He Was Required to Encounter the Danger Because of His Employment*

Here, the evidence was uncontradicted that the danger, i.e., the pieces of concrete mixed with dirt, was obvious—plaintiff so testified himself. There was also evidence, which we must assume the jury would have believed, given the applicable standard of review on appeal,[13] that (1) James's employment required him to pass across this area in order to complete his work, just as the plaintiff in *Florez* was required to pass across an obviously short and narrow plank in order to obtain water for his work on the site; (2) it was, or should have been foreseeable to defendant, that a worker might trip or fall because of the condition of the former ramp area, even though the danger was obvious; and (3) when James's necessity was balanced against the obvious danger involved, his behavior did not rise to an assumption of such risk.

*b) Whether the Jury Asked for a Rereading of Any Instructions or Evidence*

The jury here clearly struggled over this crucial issue of whether or not defendant could be liable even if the danger was obvious. It requested a rereading of James's entire testimony, and asked, "According to law, who was responsible for the safety of a non-employee (delivery person)[?]" This question was answered by rereading to the jury BAJI No. 8.32, as erroneously modified. After this instruction was reread, the trial court asked if there were any further questions, and the following telling exchange occurred:

"Juror Cordova: Your Honor.

"The Court: Mrs. Cordova.

"Juror Cordova: We were concerned there was no other law that applies to this situation in relationship to this law as far as—how do I explain what

---

[13] " 'It is true that in determining whether or not a *verdict is supported by the evidence*, we must assume that the jury accepted the view most favorable to the respondent. However, in determining *whether or not the instructions given are correct*, we must assume [in contrast] that the jury might have believed the evidence upon which the instruction favorable to the *losing* party was predicated, and that if the correct instruction had been given upon that subject the jury might have rendered a verdict in favor of the losing party.' [Citations.]" (*Henderson* v. *Harnischfeger Corp., supra,* 12 Cal.3d 663, 674, quoting *O'Meara* v. *Swortfiguer* (1923) 191 Cal. 12, 15 [214 P. 975], italics added. See also *Williams* v. *Carl Karcher Enterprises, Inc., supra,* 182 Cal.App.3d 479, 489-490 to the same effect.)

we were talking about[?] That there is no other special circumstances or anything. That is the law right there as you read it.

"The Court: Right. In other words, we have tried to give you all of the precepts of the law that apply to this kind of situation. So you have to decide the case based on the instructions that you have been given, you are not to speculate as to whether or not there are any rules or principles that might be applicable that you have not been told about."

It is apparent from this exchange that the jury was troubled by the instruction that if the danger was obvious or readily apparent, then there could be no liability, regardless of the fact that plaintiff was required to encounter the danger because of his employment. As noted above, plaintiff's attorney had argued to the jury that the obviousness of the danger only affected the defendant's *duty to warn*, and had *no* effect on the defendant's *duty to provide a safe workplace*. However, the jury had been instructed that defendant could *not* be liable for an injury resulting from an obvious danger, and had been specifically advised that there was no instruction which the jury could use to circumvent this rule, "no other special circumstances or anything," which might apply, and about which Mrs. Cordova expressed the jury's concern.

### c) The Closeness of the Verdict on the Issue of Defendant's Duty

The jury voted 11 to 1 on the issue of whether the accident had occurred on defendant's premises. It voted 10 to 2 on the issue of whether defendant was negligent. Thus, one can infer from the high degree of agreement on the issue of negligence that the jury *did* follow the erroneously modified version of BAJI No. 8.32, and that its adherence to the instruction's requirements was prejudicial to plaintiffs.

### d) The Effect of Counsels' Arguments

In his closing argument, defense counsel placed special emphasis on the fact that plaintiff had not only admitted that the condition of the former ramp area was not "unreasonable," but that he also had admitted that the condition was open and obvious and that therefore defendant could not be held liable for any injury resulting from such a danger:

" . . . now, you are going to read all sorts of things about what negligence is but basically it is did Mission Ready Mix do something unreasonable. Was this an unreasonable condition. I elicited testimony right here with Mr. Osborn sitting right there, I asked him specifically, if it was an unreasonable condition, would you have encountered it? Counsel objected,

the judge overruled it, and he said, 'No.' Mr. Osborn himself has told you that the condition was not unreasonable.[14] If it was he wouldn't have entered it. The reason he had to say that is because he had been at these kind of areas before, cement is constantly involved in construction and this is nothing unusual. So, from his own testimony there is no negligence. You are going to be instructed also on the duties of owners to contractors. Counsel talked about that. It will be right there. It is going to say a business proprietor is not the insurer of the safety of the employees of a supplier *and cannot be held liable for an injury resulting from a danger which was obvious or which should have been observed in the exercise of ordinary care . . . . But he [James] said it was open and obvious. He again testified himself out of court.* Because it was open and obvious and there was no duty to warn." (Italics added.)

Plaintiffs' counsel attempted, in argument, to focus the jury on his theory of the law that although an open and obvious danger may absolve a business proprietor of the duty to warn, the existence of an open and obvious danger did not mean that the proprietor was under no duty to provide a safe workplace, particularly when James, as an employee, was required to encounter the danger because of his work.[15] However, although the jury was instructed that an employee required to work in a dangerous situation, may, because of the necessities of the situation, be limited in the caution he can take for his safety, and that a business proprietor has a duty to provide a safe workplace, they also were instructed that "a business proprietor is not

---

[14] This was a misstatement of James's testimony. As noted earlier in this opinion, James never testified that the condition was "not unreasonable." He simply stated that "I went across because I had to unload."

[15] [Argument by plaintiffs' attorney]: " . . . [Defendant's attorney] referred to an instruc-. tion with respect to an open and obvious condition. And he said if there is an open and obvious—he read a part of it, let's see. Business proprietor is not the insurer of the safety of employees of a supplier and cannot be held to [be] liable for an injury resulting from the damage [sic] which was obvious or which should have been obvious in the exercise of ordinary care. You will get this instruction. It is the second sentence of the second paragraph of the entire instruction.

"The instruction talks about three duties of the owner that I referred to. The fact that there is a construction area there sitting there, that you can see a construction area does not mean the owner of the premises walks away if somebody gets hurt. What it means is if the condition that caused the condition of the concrete, the covered concrete that's in the dirt caused the injury, is open and obvious, then there is no duty to warn. It doesn't mean that there is no duty to keep the place safe and it doesn't mean that there isn't a duty to provide a safe work place.

"Now, this is on a very fundamental point of this case, what are Mission Ready Mix's responsibilities. Never once did [defendant's attorney] talk about the duty to provide a safe place for work. Never once. Because there is nothing to talk about there . . . .

" . . . There were no precautions taken, for the safety of drivers. This is a work place. Plaintiff is only doing his job. Pure and simple.

"I told you on the first day, I told you at the beginning of our talk here today, he was required to work there, he worked there. They had a duty to make it safe . . . ."

the insurer of the safety of the employees of a supplier *and cannot be held liable for an injury resulting from a danger which was obvious or which should have been observed in the exercise of ordinary care.*" Thus, the jury was instructed that even *if* James was held to a lessened degree of caution, given the danger of his workplace, and even *if* defendant had a duty to provide a safe workplace, which it had breached, that there could be *no* liability, period, if James's injuries were caused by an obvious or readily observable danger. It is therefore clearly probable that this closing argument contributed to the misleading effect of giving the modified and erroneous version of BAJI No. 8.32.

### e) The Effect of Other Instructions Given

The instruction given which most closely related to plaintiffs' theory, BAJI No. 3.40, stated: "When a person's lawful employment requires that he work in a dangerous location or place that involves unusual possibilities of injury, or requires that in the line of his duty he take risks which ordinarily a reasonably prudent person would avoid, the necessities of such a situation, insofar as they limit the caution that he can take for his own safety, lessen the amount of caution required of him by law in the exercise of ordinary care."

This instruction, although correct, did *not* cure the problem created by the modified version of BAJI No. 8.32. It simply instructed the jury that the amount of care required of *James* in a dangerous location was less than that required in a nondangerous location, if he was required to be there because of his employment. However, the amount of care required of *James* was irrelevant if the jury followed BAJI No. 8.32 as modified, because BAJI No. 8.32 flatly stated that *if* the danger involved was obvious or readily observable, *then* defendant could *not* be liable for James's injuries. In other words, once the jury determined that the danger was obvious (as was testified to by James himself), they were *required* to conclude that defendant was not negligent. At that point, whether James had been contributively negligent, or had even assumed the risk, was no longer relevant.

### CONCLUSION

After considering the five factors noted above, we conclude that the instructional error was prejudicial, i.e., that it is reasonably probable that a result more favorable to plaintiffs would have been obtained in the absence of the error. (*People* v. *Watson, supra*, 46 Cal.2d 818, 836.)

Having come to the conclusion that there was prejudicial instructional error because the jury was given an incorrect jury instruction on the crucial

issue of liability, we need not address plaintiffs' remaining arguments that (1) the trial court erred by failing to give plaintiffs' requested special instructions and BAJI No. 8.30, and (2) there was no substantial evidence to support the jury's conclusion that defendant was not negligent in its management of the premises or by failing to warn.

## DISPOSITION

The judgment is reversed.

Dabney, Acting P. J., and McDaniel, J.,* concurred.

Respondent's petition for review by the Supreme Court was denied December 13, 1990.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.