Filed 8/3/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ABEL MONTES, SR., et al., | B309454 |
| Plaintiffs and Appellants, | |
| v. | Los Angeles County Super. Ct. No. BC688158 |
| YOUNG MEN'S CHRISTIAN ASSOCIATION OF GLENDALE, CALIFORNIA, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jon R. Takasugi, Judge. Affirmed.

Carpenter & Zuckerman, Gary S. Lewis and Gregory A. Coolidge for Plaintiffs and Appellants.

Horvitz & Levy, Stephen E. Norris, Eric S. Boorstin; Olson Law Group and Sonali Olson for Defendant and Respondent.

_____

## SUMMARY

Abel Montes, Jr., fell to his death from the steep, sloped roof of a residential building where he lived. The building was owned by Young Men's Christian Association of Glendale, California (YMCA or defendant). Mr. Montes had been drinking and had eaten a marijuana brownie earlier, was feeling high, and had been acting erratically before the fall. The parties agree there was an "open and obvious risk" from the roof sloped at a steep angle and covered with brittle, broken, slippery and unstable Spanish tiles. They also agree there was no need for Mr. Montes to be on the roof.

Under these circumstances, defendant owed no duty of care to Mr. Montes, and his parents cannot prevail on their wrongful death claims based on premises liability and negligence. We affirm the trial court's grant of summary judgment for defendant.

## FACTS

Mr. Montes was a 23-year-old resident of defendant's apartment building in Glendale. He attended a birthday party on New Year's Eve 2015, where he was seen drinking beer and some champagne. A coworker drove Mr. Montes home from the party, and he arrived in the lobby of the building at about 2:00 a.m. He told the desk clerk, Eric Perrodin, that he had eaten a brownie, was not feeling well, and was "high." He declined the desk clerk's offer to call 911 and said he would go to his room.

At about 4:00 a.m., Mr. Montes returned to the lobby and began behaving erratically, getting on his knees to pray, rolling around against the wall, knocking down plants, and falling to the floor, knocking down a window curtain. Then he told Mr. Perrodin that he was going back to his room.

At about 6:00 a.m., Mr. Perrodin looked outside and discovered Mr. Montes lying on the hood of his (Mr. Perrodin's) car.

2

He was still alive.  Mr. Perrodin called 911.  At 7:06 a.m., Mr. Montes was pronounced dead.

Mr. Montes's parents, Abel Montes, Sr., and Angela Reisner, individually, and his father as the administrator of his estate, filed this wrongful death and survival action in December 2017.

In August 2019, defendant moved for summary judgment or alternatively summary adjudication.  Defendant contended plaintiffs had no evidence of a dangerous condition on the premises, or that any dangerous condition caused the incident, or that defendant had a duty to prevent the incident.

Plaintiffs' opposition pointed to evidence the roof was in a dangerous condition, was a dangerous trip/slip hazard, "and caused the decedent's fall in multiple ways."  There were no guardrails, walkways or railings on the roof, and no physical barriers or warning signs to prevent residents from accessing the roof.  There was a stairway to the fifth floor of the building, but nothing on that floor except a small doorway to the roof.  There was no lock on the doorway.  After one steps through the doorway, there is a roof alcove and a wall-mounted ship's ladder, about four feet high and with four rungs, leading up to the roof.  There was no lock or other physical barrier on the ladder to the roof.

Plaintiffs' opposition also contended there was evidence defendant knew residents went up on the roof.  Mr. Perrodin testified that he "had heard of roof stuff, but I, again, never knew what roof, how they got there, was just one of those things you heard."  He was asked, "What kind of roof stuff did you hear about," and answered, "Just the fact that they were up on the roof. I assumed the same roof—the flat roof.  I didn't know."  (One area of the roof was flat and made of rubber, not Spanish tiles.)

3

Plaintiffs' safety expert, Brad Avrit, stated he inspected the roof on September 9, 2019. He saw "graffiti on the roof dated '2001' as well as beer bottles and cigarette butts discarded on and around the area of the roof where the subject incident occurred." However, none of Mr. Avrit's photographs show graffiti or debris on the sloping tile roof. The "2001" graffiti was written in the alcove that gave access by ladder to the roof. Defendant contends Mr. Avrit apparently means the graffiti and debris were in the alcove. Mr. Avrit opined, among other things, that it was "more probable than not that [Mr. Montes] slipped on the sloped Spanish tiles on the roof, thereby causing him to fall."

There was also testimony from Francisco Cortez that he had been on the roof of the YMCA with Mr. Montes one time. He remembered that "we had to be sneaky to be able to go up there."

On December 10, 2019, after receiving supplemental briefing on the condition of the roof where the fall occurred, the trial court entered an order denying summary judgment. The court concluded there were triable issues of material fact "concerning whether the condition of the roof where the fall occurred was dangerous, and whether or not Decedent fell, as opposed to jumped, from the roof." The court stated it need not consider other issues, such as "whether or not access to the roof should have been prevented."

Defendant filed a petition for writ of mandate. After briefing, we issued an alternative writ, stating among other points that the superior court "did not consider the threshold argument that petitioner didn't have a legal duty to protect Montes from the obvious risk of falling from a roof."

The trial court then vacated its order denying summary judgment and set a new hearing on the duty issue. After

4

supplemental briefing and argument, the trial court granted defendant's motion for summary judgment.  The court held defendant did not owe Mr. Montes a duty to warn of, or remedy, the open and obvious danger posed by the roof.  The court observed that "[b]ecause there was no practical necessity for Mr. Montes, or any individual, to encounter this open and obvious danger, the harm here, i.e., Mr. Montes' fatal fall from the roof, is not foreseeable as a matter of law."

Judgment was entered on October 30, 2020, and plaintiffs filed a timely notice of appeal.

## DISCUSSION

### 1.    Summary Judgment Principles

A defendant moving for summary judgment must show "that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action."  (Code Civ. Proc., § 437c, subd. (p)(2).)  Summary judgment is appropriate where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  (*Id.,* subd. (c).)

Our Supreme Court has made clear that the purpose of the 1992 and 1993 amendments to the summary judgment statute was " 'to liberalize the granting of [summary judgment] motions.' " (*Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 542.)  It is no longer called a "disfavored" remedy.  (*Ibid.*)  "Summary judgment is now seen as 'a particularly suitable means to test the sufficiency' of the plaintiff's or defendant's case."  (*Ibid.*)  On appeal, "we take the facts from the record that was before the trial court . . . .  ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and

5

sustained." ' " (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.)

**2.    The Duty of Care and Open and Obvious Dangers**

To prevail on a negligence theory, plaintiffs are required to show defendant owed Mr. Montes a legal duty of care with respect to the alleged dangerous condition that caused his injury—here, the steep, sloping roof covered with brittle, broken, slippery and unstable Spanish tiles.  (See *Barnes v. Black* (1999) 71 Cal.App.4th 1473, 1477 ["The existence of a duty of care is an essential element of [the plaintiff's] causes of action for negligence [and] premises liability . . . ."].)  The existence of a duty is a question of law for the court.  (*Kentucky Fried Chicken of Cal., Inc. v. Superior Court* (1997) 14 Cal.4th 814, 819.)

Whether a duty should be imposed on a defendant depends on various policy considerations known as the *Rowland* factors.  (See *Rowland v.  Christian* (1968) 69 Cal.2d 108, 112–113.)  Prime among these is the foreseeability of harm to another.  (*Osborn v. Mission Ready Mix* (1990) 224 Cal.App.3d 104, 122 (*Osborn*).)  The court must evaluate " ' "whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." ' " (*Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 446 (*Jacobs*).)

"Foreseeability of harm is typically absent when a dangerous condition is open and obvious.  [Citation.]  'Generally, if a danger is so obvious that a person could reasonably be expected to see it, the condition itself serves as a warning, and the landowner is under no further duty to remedy or warn of the condition.'  [Citation.]  In that situation, owners and possessors of land are entitled to assume others will 'perceive the obvious' and

6

take action to avoid the dangerous condition." (*Jacobs, supra,* 14 Cal.App.5th at p. 447.)

There may be a duty of care owed even where a dangerous condition is open and obvious, when "it is foreseeable that the danger may cause injury despite the fact that it is obvious (e.g., when necessity requires persons to encounter it)." (*Osborn, supra,* 224 Cal.App.3d at p. 122, italics omitted.) In other words, "the obviousness of the condition and its dangerousness . . . will not negate a duty of care when it is foreseeable that, *because of necessity or other circumstances, a person may choose to encounter the condition.*" (*Jacobs, supra,* 14 Cal.App.5th at p. 447, italics added.)

The cases provide several examples of circumstances where it was foreseeable that a plaintiff would "choose to encounter" an obviously dangerous condition. These often involve workers, as *Jacobs* explains: "In *Osborn*, for example, a trucker was injured when he fell walking over a demolished concrete ramp, which was the only means of reaching a silo for delivery of materials. [(*Osborn, supra,* 224 Cal.App.3d at pp. 109–110.)] In finding a disputed factual issue as to premises liability, the court noted that the worker's 'employment required him to pass across this area in order to complete his work.' (*Id.* at p. 123; see *Florez v. Groom Development Co.* (1959) 53 Cal.2d 347, 358–359 [foreseeable that plaintiff would attempt to walk across a narrow plank because his job duties required him to access a faucet and '[t]he dangerous plank was the only means furnished to reach that faucet'].)" (*Jacobs, supra,* 14 Cal.App.5th at p. 447.)

*Jacobs* also describes other cases where courts have found a duty of care was owed to warn of or protect against an open and obvious danger. For example, in *Martinez v. Chippewa*

7

*Enterprises, Inc.* (2004) 121 Cal.App.4th 1179, 1185, "the court determined there was a practical necessity for the plaintiff to walk across wet pavement because the pavement was the 'principal if not sole access way from the street to defendant's building, which housed a government office serving the public.'" (*Jacobs, supra,* 14 Cal.App.5th at pp. 447–448.)

In *Jacobs,* the court found no duty was owed to a plaintiff whose accident was not reasonably foreseeable as a matter of law. There, one of the plaintiffs was injured when he fell into an empty pool while he and his wife were viewing a property as potential buyers. The husband stepped onto a diving board to look over a fence, and the base of the diving board collapsed. As relevant here, the court concluded the defendant "could not be held liable for failing to remedy the dangerous condition of the empty pool because [the husband's] accident was not reasonably foreseeable." (*Jacobs, supra,* 14 Cal.App.5th at p. 441.) In *Jacobs*, the plaintiffs did not challenge "the trial court's conclusion that '[t]he dangers of the empty swimming pool were *per se* obvious to any adult.' . . . The issue is whether there is any evidence from which a trier of fact could find that, as a practical necessity, [the husband] was foreseeably required to expose himself to the danger of falling into the empty pool." (*Id.* at p. 447.)

*Jacobs* concluded: "[W]e agree with the trial court's conclusion that 'the undisputed facts indicate that it was not reasonably foreseeable that [the husband] would expose himself to the risks associated with the empty pool, *as he was neither required nor invited to do so.* Simply stated, as a matter of law it was not foreseeable that he would knowingly embrace an entirely obvious risk by voluntarily using the diving board on an empty pool for a purpose for which it was not intended.' Because [the

8

husband's] accident was not foreseeable, the court appropriately granted summary judgment on plaintiffs' theory that [the defendant realtor] is liable for failing to protect [the husband] from the dangerous condition of the empty pool." (*Jacobs, supra,* 14 Cal.App.5th at pp. 448–449, italics added.)

### 3.     This Case

We see no meaningful distinction between this case and *Jacobs*.  The danger from the steeply sloping roof with its broken Spanish tiles was open and obvious, and neither party contends otherwise.  Nor do plaintiffs contend Mr. Montes "had a practical necessity to be on the roof."  Instead, plaintiffs contend "practical necessity is not the only exception to the no-duty rule."  Plaintiffs emphasize *Osborn*'s reference to practical necessity as "an example" of circumstances where it is foreseeable that the danger may cause injury despite the fact that it is obvious.  (See *Osborn, supra,* 224 Cal.App.3d at p. 122 ["(e.g., when necessity requires persons to encounter it)"].)

But there are no other circumstances in this case that might explain why it was reasonably foreseeable Mr. Montes might choose to venture onto a steep sloping roof that was obviously dangerous.  (*Jacobs, supra,* 14 Cal.App.5th at p. 447.)  Plaintiffs "cannot use [Mr. Montes's] voluntarily induced state of intoxication to claim that he was unaware of the obvious peril . . . ." (*Edwards v. California Sports, Inc.* (1988) 206 Cal.App.3d 1284, 1289.)

Plaintiffs insist that "foreseeability cannot be denied" because of the desk clerk's testimony that he had heard of people going on what he assumed to be the flat part of the roof.  Even without the desk clerk's testimony, it is indisputable that defendant must have known, and intended that people would occasionally access the roof, for example, to make repairs.

9

Otherwise, there would not have been stairs to the fifth floor leading to nothing but a small door giving access to the roof alcove where there was a short ladder leading up to the roof.  But that fact does not create a material disputed fact that Mr. Montes's fatal fall from the open and obviously steep sloping roof with broken and slippery Spanish tiles was reasonably foreseeable.  It is irrelevant whether defendant could have taken the precautions plaintiffs now suggest because defendant had no duty to do so.

This case turns on whether it was "foreseeable that, because of necessity or other circumstances, a person may choose to encounter the [open and obvious] condition."  (*Jacobs, supra,* 14 Cal.App.5th at p. 447.)  Here, there was no necessity nor any other circumstance that made it foreseeable Mr. Montes would "choose to encounter" the dangerous roof.  As in *Jacobs,* Mr. Montes " 'was neither required *nor invited*' " to " 'expose himself to the risks associated with' " an open and obvious danger.  (*Id.* at p. 448, italics added.)  As in *Jacobs,* " 'as a matter of law it was not foreseeable that he would knowingly embrace an entirely obvious risk by voluntarily" encountering the danger.  (*Id.* at pp. 448–449.)

The law, as we have just described it, is that defendant owed no duty to do anything to protect Mr. Montes from his voluntary, unnecessary, and uninvited risk taking.  (Cf. *Edwards v. California Sports, Inc., supra,* 206 Cal.App.3d at p. 1288 ["There is a limit as to how far society should go by way of direct governmental regulation of commercial and private activity, or indirect regulation thereof through the tort system, in order to protect individuals from their own stupidity, carelessness, daring or self-destructive impulses."].)  That limit—and the rule

10

articulated in *Jacobs* and other cases about open and obvious dangers—applies here.

## DISPOSITION

The judgment is affirmed.  Defendant shall recover its costs on appeal.

GRIMES, J.

WE CONCUR:

STRATTON, P. J.

WILEY, J.

11