Filed 5/10/23  Vu v. Yang CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| HANNAH VU,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>HUNG-CHIH YANG,<br><br>    Defendant and Appellant. | B317516<br><br>(Los Angeles County<br> Super. Ct. No. BC620507) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephen I. Goorvitch, Judge.  Affirmed.

Peter C. Chen, for Defendant and Appellant.

Stuart Kane, Donald J. Hamman, and Eve A. Brackmann, for Plaintiff and Respondent.

## INTRODUCTION

Respondent Hannah Vu leased an office property in the City of El Monte from appellant Hung-Chih Yang. The parties signed a written lease. Under the lease, Yang, the landlord, was responsible for making "[a]ny alterations required by Law," except those that were "a result of Tenant's use." According to the lease, the property had recently passed "final inspection."

Shortly after Vu took possession of the property, city officials declared that the property did not comport with the city's zoning code and that Vu could not occupy it. Vu left the premises, and Vu and Yang sued each other. A bench trial followed.

The trial court found that the property's zoning issues predated the lease, meaning that they were inherent to the property itself and not a result of Vu's use of the property. It found that bringing the building into compliance with the city's rules was Yang's responsibility. It found that the property had not passed final inspection. It thus found Yang had breached the lease. It also found for Vu on other claims, including negligent misrepresentation.

Yang contends on appeal that the trial court erred by:
(a) misinterpreting the El Monte Municipal Code; (b) not crediting evidence favorable to Yang; (c) finding him in breach based on incompetent evidence, a misinterpretation of the contract, and improper reliance on a specific paragraph in the contract; and (d) failing to apply judicial estoppel. For the reasons explained below, we reject these contentions. We affirm the judgment.

2

# FACTUAL AND PROCEDURAL BACKGROUND[1]

A. *The Lease*

On May 16, 2013, Vu and Yang executed a lease of real property in the City of El Monte as tenant and landlord, respectively. The property was to be used for a medical office.

Paragraph 19 of the lease reads as follows: "GOVERNMENT IMPOSED ALTERATIONS: Any alterations required by Law as a result of Tenant's use shall be Tenant's responsibility. Landlord shall be responsible for any other alterations required by Law." "Law" is defined in the lease as "all local, state and federal laws, regulations and ordinances."

According to Paragraph 41.6 of the lease, "This office is completely new/built and recently passed all final inspection on 04-09-2013. This office lease for PREMISES CONDITION is base on as its. All changes for tenant uses are at tenant expenses including the requirement by Law &/or City."[2]

B. *Code Compliance Problems Prior to the Lease*

The parties disputed whether the building had, prior to the lease, received necessary certificates of occupancy from the City of El Monte. At trial, Steve Willkomm, who managed the Code Enforcement division for the city in 2013 and was involved with the city's determinations involving the property, described the city's permitting regime.

---

[1]     On review following a trial on the merits, "[w]e recite the facts in the manner most favorable to the judgment and resolve all conflicts and draw all inferences in favor of respondent[] . . . .  Conflicts in the evidence are noted only where pertinent to the issues on appeal." (*Meister v. Mensinger* (2014) 230 Cal.App.4th 381, 387.)

[2]     All errors in the quoted passage are original to the lease agreement.

First, the city required a "Certificate of Occupancy" certifying compliance with the state Building Code. According to Willkomm, this certificate would ordinarily issue when a "building is either brand new, you change the occupancy from one building occupancy to the other and/or you make significant improvements to a property."

Second, the city had another kind of occupancy permit, which required a building owner to demonstrate compliance with the city's zoning code and other rules. Willkomm explained that this kind of certificate of occupancy "is provided for in section 17.16.010 of the El Monte Municipal Code." Willkomm testified that the city also referred to this second kind of certificate of occupancy as a "business occupancy permit."

According to Willkomm, the property had received the first kind of occupancy permit before the lease was signed but had not received the second. The city issued a certificate of occupancy for the property with a "[f]inal date" of December 29, 2011. But this permit, according to Willkomm, was the first kind of certificate of occupancy; the permit's text identifies it as "issued pursuant to the requirements of Section 110 of the California Building Code" and "certifying . . . substantial compliance with the various ordinances of the City regulating building construction". Nothing in the record demonstrated that the second kind of permit, i.e., the business occupancy permit, ever issued. Rather, the record reveals unresolved zoning violations, which Yang knew about before signing the lease but failed to correct.

On February 21, 2012, Minh Thai, the city's Assistant Economic Development Director, sent a letter to Yang identifying a "Final Inspection Correction List." Thai, on behalf of the city, stated that "[i]n order for the Planning Division to approve the construction and final occupancy for the

4

building and site development as approved under Design Review No. 06-08, the following issue[s] must be resolved." The email identifies various structural concerns the city had regarding the property. For example, it noted that the "elevation design, finish and material were not completed in accordance to the approved design," that a "retaining wall" "was not approved," and that there were issues regarding the striping of the parking lot, the trash enclosure, and the "[u]ndergrounding" of "wired utilities."

On March 7, 2012, Yang responded to the city's letter. He did not agree to many of the required changes. For example, some of Yang's answers were "[t]he general consensus from the public is that it looks fine," "[w]e will do our best," and "[w]e can't do it."

Yang did obtain some additional approvals. The record contains a "Final Completion Form," the significance of which the parties disputed. The form has signature lines, and provides that "After all signatures have been obtained, return this document to your Building Inspector. A Final Inspection can now be accomplished." The form shows certain signatures, including one from the "Planning Department," dated April 9, 2013. However, Yang admitted that no final inspection of the property ever took place. He claimed that after visiting the city's building department, he was told that no final inspection was needed. According to Yang, he believed that the original permit he had received (dated 2011) was the governing certificate of occupancy.

Joseph Lambert, who signed the "Final Completion Form," was called as a witness by Yang. At the time of the lease, Lambert was a non-employee contractor working in the city's planning department. Lambert testified that his signature on the Final Completion Form meant that the "planning department" had approved the premises. He testified that he believed that

5

the 2011 "Certificate of Occupancy" likely meant that the property had satisfactorily complied with a zoning inspection in 2013, with the form back-dated. But Lambert conceded that he did not remember "for sure" whether the distinction Willkomm drew between the different kinds of permits was correct, or whether there was a valid certificate of occupancy in 2013. Ultimately, the trial court did not credit Lambert's testimony. Instead, noting that "Lambert gave the impression that he was not familiar with the certificate of occupancy process," the court found that Lambert had a "limited role in the inspection process" and that his job was not to "resolve" issues.

C. *The City Refuses to Let Vu Occupy the Property Because of the Code Compliance Problems*

Yang and Vu signed the lease on May 16, 2013. On May 31, 2013, Vu went to the city to apply for a business license to operate her medical practice. But she was told she could not obtain a license from the city to operate her business, because the building had not been certified for occupancy.

On June 4 or 5, 2013, Vu met with Willkomm, who told her that she could not occupy the property due to zoning issues. She was shown deficiencies, including issues with a wall, a fallen fence, a parking lot post lamp, and the garbage bin on the property. When she asked if she herself could make the required alterations, she was told that "these changes can only be performed by the owner because the owner would have to take out the permits to make these changes. A tenant can't take out the permits to make these changes."

At trial, Willkomm confirmed that the city did not, and would not, issue a permit allowing Vu to operate her business from the property because of

the lack of compliance with the city's zoning code. Willkomm confirmed that the zoning code violations had to be remedied by the property owner, not the tenant. And, he confirmed that the zoning violations at issue were not due to a particular use by Vu for the property—Willkomm agreed that there would not have been "any permissible use of the building without the certificate of occupancy."

On June 4, 2013, the city issued an administrative citation against the property. The citation, issued to Yang, explained that "A certificate of occupancy is required to occupy the building. Contact the City of El Monte to complete this requirement." On June 5, 2013, the City of El Monte Code Enforcement Division sent a letter to Yang stating that "The above referenced property has been inspected on several occasions; these inspections have disclosed the existence of conditions that violate the El Monte Municipal Code." It noted that "A Certificate of Occupancy has not been issued for this facility (EMMC 17.16.010)." Willkomm explained that this letter issued because of the property's failure to comply with zoning issues.

Vu asked Yang to bring the property into compliance. But Yang refused, telling Vu that he would eventually be able to work things out with the city and that she could remain on the property in the interim, sending her letters to that effect on June 10 and 11, 2013. Vu, who testified that her business depended on being able to make reliable appointments in advance for her patients, made plans to move out. Meanwhile, Yang met with Willkomm and other city officials on June 13, 2013. Willkomm told Yang about the zoning issues and the reasons for the city's letter. Yang promised to bring the building into compliance, but did not do so.

7

Vu moved out, and her office manager returned the keys to the property on July 31, 2013.

D. *Procedural History*

Vu filed a complaint on May 13, 2016. Yang cross-complained on April 10, 2017, for breach of the lease. Vu's operative complaint, filed during trial, pleads causes of action against Yang for breach of contract, money had and received, intentional misrepresentation, negligent misrepresentation, unjust enrichment, declaratory relief, breach of the implied covenant of good faith and fair dealing, and fraudulent concealment.

The superior court held a bench trial between June 16 and June 22, 2021. The court issued a thorough and detailed tentative statement of decision on August 30, 2021.

In its tentative statement of decision, the trial court credited Willkomm's testimony. It also credited Vu's testimony and her "characterization of the record." Based on those credibility findings, the trial court had little difficulty finding that Yang had breached the lease.

The trial court found Yang had breached Paragraph 19 of the lease by failing to make alterations required "by law," alterations that did not arise from Vu's "use" of the property. The court specifically found that the zoning issues "did not relate to [Vu's] use of the property" but rather "the property itself," making them Yang's responsibility. It noted that the required alterations could not have been due to Vu's use of the property, because the violations related to the underlying property and because the city first identified the zoning issues before Vu had entered into the lease. The trial court found that Yang failed to "sufficiently" respond to the city's required alterations.

8

The trial court also found a breach of Paragraph 41 of the lease, which stated that the property had "passed all final inspection on 04-09-2013 [*sic*]." The court interpreted this provision as a "warranty that the building is suitable for occupancy, i.e., the building had passed final inspection by the City and was ready to be used." It found that no final inspection had taken place.

The trial court rejected Yang's contention that the 2011 certificate and the "Final Completion Form" meant that Yang had complied with the city's requirements. It also rejected Yang's argument that other provisions of the lease insulated him from liability.

The trial court also found Yang liable for negligent misrepresentation. It concluded that Yang's representation in the lease that the building had passed final inspection was false and unreasonable, and that Vu had reasonably relied on that representation to her detriment. And it found for Vu on her claims for declaratory relief, for money had and received and unjust enrichment, and for breach of the implied covenant of good faith and fair dealing.

On the other hand, the trial court found in Yang's favor on Vu's claims for intentional misrepresentation and fraudulent concealment. It reasoned that Yang's false representation that the building had passed final inspection, while unreasonable, was not an intentional misrepresentation, because Yang was legitimately confused by the city's requirements. Vu has not appealed these determinations.

Yang filed objections to the tentative statement of decision. The trial court addressed and rejected the objections, adopting its tentative statement of decision as a final statement with a single change on November 1, 2021. Ultimately, it entered final judgment and awarded damages in Vu's favor in

9

the amount of $100,681.46, plus attorney fees and costs in the amount of $208,746.80.[3]  Yang timely appealed.

## DISCUSSION

A. *Yang's Legal Argument About the City's Municipal Code Is Immaterial*

On appeal, Yang's main argument is that the trial court erred as a matter of law in in interpreting the El Monte Municipal Code.  According to Yang, both the City of El Monte and the trial court misconstrued Municipal Code section 17.16.010—the provision the city cited in its June 5, 2013 letter as making the property ineligible for a certificate of occupancy.  Although Willkomm, the city's code enforcement manager at the relevant time, testified that section 17.16.010 concerned a "business occupancy permit" that Yang did not obtain, Yang asserts that Willkomm misinterpreted that provision.  Properly interpreted, argues Yang, El Monte Municipal Code section 17.16.010 only required Yang to have the Building-Code-related certificate that he did obtain.  Yang also argues that a separate provision of the city's Municipal Code, section 5.04.040, which relates to licenses to operate a business, is the only relevant section under which a "business occupancy permit" could issue.[4]  Thus, Yang argues, with the city's code construed according to his interpretation, he cannot have been liable for breach due to his failure to obtain a second occupancy permit or to pass inspection.

---

[3]      Yang's appeal neither challenges the trial court's calculation of damages nor addresses any issue involving attorney fees.

[4]      Yang's motion to take judicial notice of the existence of Municipal Code section 5.04.040 is granted.

We decline Yang's invitation to construe the El Monte Municipal Code. Legal interpretation of the city's code does not determine the issues on appeal. Here, we are not considering the propriety of the City of El Monte's enforcement decision, which might require us to consider conflicting constructions of its municipal code as a matter of law.

Rather, we are considering property alterations the trial court found were *in fact* required by the City of El Monte. Even if the city wrongly interpreted its own code in requiring the alterations (an issue we do not decide),[5] someone was required, pursuant to the city's regulations, to make them before the property could be occupied for use. The question for us is whether the trial court erred in finding that, under the lease, Yang bore the risk and responsibility of making those alterations. (See *Hadian v. Schwartz* (1994) 8 Cal.4th 836, 845 (*Hadian*) [explaining that core question involving "laws" clause in commercial lease was "allocation of risk" of compliance with governmental orders].) We turn now to that question.

---

[5]     Although we do not decide the issue, we note that Yang's interpretation of the city's municipal code appears incorrect. El Monte Municipal Code section 17.16.010 provides that a "Certificate of Occupancy" shall issue when "the following conditions are met: [¶] . . . [¶] The real property complies with all discretionary land use authorizations affecting the real property; and all other real property related provisions of this code, most notably the provisions of Title 15 (Building and Construction) and Title 17 (Zoning)." Thus, the code provision on its face contemplates review of planning and zoning issues before a certificate of occupancy issues. Nothing in the code provision suggests that the certificate under section 17.16.010 is the same, as a matter of law, as the certificate Yang obtained, which was "issued pursuant to the requirements of Section 110 of the California Building Code." Nor does Municipal Code section 5.04.040, which requires businesses operating in the City of El Monte to obtain a business "license," appear to support Yang's position.

11

B. *Substantial Evidence Supports the Trial Court's Finding That the Lease Was Breached*

The relevant provisions of the lease are Paragraphs 19 and 41.6. (See *Hadian*, *supra*, 8 Cal.4th at pp. 844–845 [interpretation of lease "begins with the language of the lease itself" which is "presumptively controlling in determining the intent of the parties"]; *Fireman's Fund Ins. Co. v. Workers' Comp. Appeals Bd.* (2010) 189 Cal.App.4th 101, 111 ["The mutual intent of the parties is ascertained from the contract language, which controls if clear and explicit"].)

Paragraph 19 makes "alterations" "required by Law *as a result of Tenant's use*" Vu's responsibility. (Italics added.) Yang was "responsible for *any other* alterations required by Law." (Italics added.) The lease defined "Law" as including "local . . . regulations and ordinances." In Paragraph 41.6, the lease stated that the property had passed "all final inspection [*sic*]." These provisions are unambiguous on their face. Yang was responsible for alterations required by local regulations that were not a "result of [Vu's] use." And he warranted that the property had passed "all final inspection [*sic*]."

Whether Yang violated these provisions depends on factual findings made by the trial court. And those factual findings, in turn, are reviewed by this court only for substantial evidence. "When a trial court has resolved a disputed factual issue, an appellate court reviews the ruling according to the substantial evidence rule. The trial court's resolution of the factual issue must be affirmed if it is supported by substantial evidence." (*Heppler v. J.M. Peters Co.* (1999) 73 Cal.App.4th 1265, 1290.) "On review for substantial evidence, 'all of the evidence must be examined, but it is not weighed. All of the evidence most favorable to the respondent must be accepted as true, and that unfavorable discarded as not having sufficient verity to be accepted by

12

the trier of fact. If the evidence so viewed is sufficient as a matter of law, the judgment must be affirmed.'" (*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2007) 157 Cal.App.4th 835, 866 (*OCM*).) "'To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment.'" (*Bloxham v. Saldinger* (2014) 228 Cal.App.4th 729, 750.) And, under the substantial evidence standard, "'where the interpretation of the contract turns upon the credibility of conflicting extrinsic evidence which was properly admitted at trial, an appellate court will uphold any reasonable construction of the contract by the trial court.'" (*McLear-Gary v. Scott* (2018) 25 Cal.App.5th 145, 158.)

Here, substantial evidence supports a finding that the City did not require the zoning-related alterations as a result of Vu's use of the property, meaning that Yang was responsible for the alterations under Paragraph 19 of the lease. The city found the property out of compliance with its zoning regulations—before any lease with Vu was contemplated—when Yang received the "Final Inspection Correction List" in 2012. That list identifies a host of structural issues. Those issues related exclusively to the underlying property, not a tenant's particular use. These same structural issues, and related zoning issues, prevented the property from receiving a "business occupancy permit." As Willkomm testified and the trial court found, the alterations would have been required before *any* tenant could have occupied the property. The city's requirements were thus "alterations," required by

"Law" that were not "a result of" Vu's "use" of the property. They were Yang's responsibility under the lease.

Equally, applying the facts as found by the trial court to Paragraph 41.6, substantial evidence supports a finding that the property never passed a "final inspection." Yang admitted that no such inspection took place. The "Final Completion Form" relied upon by Yang shows that a final inspection was contemplated, not completed. And the city issued citations and sent a letter in June 2013, demonstrating that a final inspection never took place. Thus, Yang's warranty in Paragraph 41.6 that "This office . . . recently passed all final inspection on 04-09-2013 [*sic*]," was false, based on the facts as found by the trial court.

On appeal, Yang points to contrary evidence. But to the extent that Yang wishes to challenge the trial court's factual findings—or to argue that there is a factual conflict in the extrinsic evidence that would somehow bear on the interpretation of the otherwise unambiguous language of Paragraphs 19 and 41.6—Yang ignores our powers as a reviewing court. For example, Yang asks us to discount the credibility of Willkomm (whom the trial court found credible) and to find that Lambert (whom the trial court did not find credible) established that the second permit was unnecessary. Yang also makes factual arguments regarding Vu's conduct. But, under the substantial evidence standard, we cannot reweigh the evidence in Yang's favor or replace the trial court's credibility findings with new findings of our own. Rather, we are required to "discard[]" the evidence favorable to Yang. Having done so, we conclude that the evidence in Vu's favor is sufficient under substantial evidence review to support the finding of breach. (See *OCM*, *supra*, 57 Cal.App.4th at p. 866.)

14

In addition, we find that Yang has forfeited his right to substantial evidence review. His brief fails to cite or discuss, much less fairly present or explain, the bulk of the evidence supporting the trial court's judgment. "An appellant challenging the sufficiency of the evidence to support the judgment must cite the evidence in the record supporting the judgment and explain why such evidence is insufficient as a matter of law. . . . An appellant who fails to cite and discuss the evidence supporting the judgment cannot demonstrate that such evidence is insufficient." (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1408.) For this reason as well, we reject Yang's challenge to the trial court's factual findings.

C. *Yang's Other Challenges to the Finding of Breach Do Not Succeed*

Yang also argues that there were other errors in the trial court's finding that the lease was breached. We are unpersuaded.

First, Yang argues that the trial court erred in treating Willkomm as an expert witness or in permitting him to testify based on his experience as a city employee. The court did not treat Willkomm as an expert witness or err in admitting his testimony. Willkomm was a code enforcement official for the city. He knew personally, as a factual matter, why the city did not issue a business occupancy permit. He thus had personal knowledge of both the city's permitting process and its application to the facts here. (See Evid. Code, § 702, subd. (a); *People v. Lewis* (2001) 26 Cal.4th 334, 356 ["In order to have personal knowledge, a witness must have the capacity to perceive and recollect"].) To the extent that Willkomm offered opinion testimony regarding the city's permitting process, the trial court was within its discretion to admit such testimony as based on Willkomm's perception and helpful to a clear understanding of his testimony. (*Osborn v. Mission Ready*

15

*Mix* (1990) 224 Cal.App.3d 104, 112 ["opinion testimony by a lay witness is admissible if it is based on the witness's perception and helpful to a clear understanding of the witness's testimony"]; *ibid.* [decision to admit lay witness opinion testimony within discretion of trial court and generally permissible so long as cross-examination allowed].)

Second, Yang asserts that the trial court failed to give due weight to three additional provisions of the lease. He invokes Paragraph 12, which states that "Tenant accepts the Premises subject to all local, state and federal laws, regulations and ordinances ('Laws'). Landlord makes no representation or warranty that Premises are now or in the future will be suitable for Tenant's use. Tenant has made its own investigation." He cites Paragraph 41, which describes the lease as a "lease for PREMISES CONDITION," which was based on "as its [*sic*]." And he mentions Paragraph 11, which states that "Tenant has examined the Premises and acknowledges that Premise is clean and in operative condition." The sum of these provisions, Yang argues, is that Vu was required to accept the property regardless of its non-compliance with city regulations. Not so.

"Courts will favor an interpretation that gives meaning to each word in a contract over an interpretation that makes part of the writing redundant." (*Yahoo Inc. v. National Union Fire Ins. Co. etc.* (2022) 14 Cal.5th 58, 69; see also *National Ins. Underwriters v. Carter* (1976) 17 Cal.3d 380, 386 ["Under well established principles of contract interpretation, '. . . when a general and particular provision are inconsistent, the latter is paramount to the former'"]; see Code Civ. Proc., § 1859.) Here, the lease contained a specific provision, Paragraph 19. That provision addresses which party would bear the risk of non-compliance with city regulations, as discussed above. Paragraph 19 is explicit and precise—Yang is responsible for all "alterations" required by city

16

regulations except those that arise "as a result of Tenant's use." Thus, Paragraph 19 is the more specific provision. There is no basis for reading Paragraph 19 out of the lease merely because Paragraph 12 generally disclaims suitability for use, because Paragraph 11 warrants that Vu inspected the property, or because Paragraph 41 generally warrants that the lease is on an "as is" basis.[6] Similarly, Paragraph 41.6's representation and warranty that the property passed "all final inspection [*sic*]" is a specific promise. That specific promise was not trumped by the more general terms of the lease.[7]

Third, Yang asserts that the trial court was not entitled to rely on Paragraph 19 in ruling against him because Vu did not specifically identify Paragraph 19 in her complaint. This argument lacks merit. Vu attached a copy of the lease to her complaint. She was entitled to plead breach of contract by attaching the contract and pleading the facts supporting a breach, without specifically identifying the individual contractual paragraphs

---

[6]     Indeed, even if the lease had not contained the specific provisions in Paragraphs 19 and 41.6 allocating the risk of regulatory non-compliance, Yang might still have been required to bear the costs of the alterations required by the city. In short-term leases, Landlords ordinarily bear the risk of property remediations, even when the lease language establishes a landlord-friendly "net" lease. (See *Hadian*, *supra*, 8 Cal.4th at p. 846 [discussing issue in context of three-year lease].) Here, the lease was for a period of slightly more than one year, meaning this rule may apply. However, given our holding, we need not address this issue.

[7]     For similar reasons, we reject Yang's argument that the trial court "constru[ed] the Lease as requiring Yang to provide the Premises to enable Vu to immediately open and operate her business on-site without requirement of any repairs or additional inspections or otherwise place the burden of any subsequently required repairs and inspections on Yang." The trial court did not do so. Rather, it applied the lease's Paragraphs 19 and 41.6 to the facts before it. For the reasons we explain we find no error in the trial court's determination.

17

breached. (*Davies v. Sallie Mae, Inc.* (2008) 168 Cal.App.4th 1086, 1091 ["'Where a written contract is pleaded by attachment to and incorporation in a complaint, and where the complaint fails to allege that the terms of the contract have any special meaning, a court will construe the language of the contract on its face to determine whether, as a matter of law, the contract is reasonably subject to a construction sufficient to sustain a cause of action for breach'"].) In any event, there is no question that, throughout the litigation, Yang had notice that breach of the lease was at issue, notice of Paragraph 19, and notice of the issues concerning regulatory compliance that were exhaustively litigated at trial, so any error on this issue would be harmless.[8]

D. *The Trial Court Did Not Err in Declining to Apply Judicial Estoppel*

Finally, Yang asserts that the trial court erred by failing to apply the doctrine of judicial estoppel. When Vu filed for Chapter 7 bankruptcy in 2015, she listed Yang as a potential creditor. In objections to the trial court's tentative statement of decision, Yang argued that Vu should have been judicially estopped from asserting her claim against Yang because she listed him as a creditor. We find no error in the trial court's failure to apply judicial estoppel.

Judicial estoppel may apply when "''(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first

---

[8] Yang argues that the supposed failure to adequately plead a breach of Paragraph 19 of the lease means that the trial court improperly issued an "advisory opinion." The trial court's judgment here, based on a specific contractual injury to Vu, was in no way an advisory opinion. (See *People ex rel. Becerra v. Superior Court* (2018) 29 Cal.App.5th 486, 496 [standing appropriate when party has "'beneficial interest that is concrete and actual, and not conjectural or hypothetical'"].)

18

position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake."'" (*People v. Castillo* (2010) 49 Cal.4th 145, 155.) Even when the necessary elements of judicial estoppel are found, "'because judicial estoppel is an equitable doctrine [citations], whether it should be applied is a matter within the discretion of the trial court. [Citations.] The exercise of discretion for an equitable determination is reviewed under an abuse of discretion standard.'" (*Miller v. Bank of America, N.A.* (2013) 213 Cal.App.4th 1, 10.)

Here, Yang failed to demonstrate the third and fourth elements required for judicial estoppel. He made no showing that Vu's identification of Yang as a creditor in her bankruptcy proceeding was "successful." Indeed, Yang never identified any benefit at all that Vu obtained from listing Yang as a creditor in her Chapter 7 bankruptcy petition. Nor did Yang show that Vu had taken a "totally inconsistent" position before the bankruptcy court. He made no showing (and offered no evidence or argument) that by listing Yang as a potential creditor, Vu was also admitting the validity of Yang's claim. We find no error, and no abuse of discretion, in the trial court's refusal to apply the doctrine of judicial estoppel on these facts.

On appeal, Yang argues for the first time two additional theories of judicial estoppel: that Vu's failure to list her lawsuit against Yang as an asset of the bankruptcy estate should give rise to an estoppel, and that Vu's statements of income in a prior bankruptcy filing (a Chapter 11 filing in 2012) were inconsistent with her claims of damages put before the trial court. Because Yang failed to raise these theories below, and because we lack a full record on which we could consider them, we find that he has forfeited these arguments on appeal. (*Franz v. Board of Medical Quality Assurance* (1982)

19

31 Cal.3d 124, 143 [appellate courts generally will not consider arguments first raised on appeal]; *Gottlieb v. Kest* (2006) 141 Cal.App.4th 110, 138 [explaining how judicial estoppel based upon failure to disclose legal claim may depend on specifics of decisions made in bankruptcy court].)[9]

**DISPOSITION**

The judgment is affirmed. Vu is awarded her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

DAUM, J.[*]

We concur:

CURREY, Acting P.J.　　　　COLLINS, J.

---

[9]　In his reply brief, Yang also challenges the court's finding on negligent misrepresentation. We do not consider arguments raised for the first time in a reply brief unless the appellant offers a good reason why the argument was not asserted in the opening brief. (*Alcazar v. Los Angeles Unified School Dist.* (2018) 29 Cal.App.5th 86, 100–101, fn. 5.) Yang offers none. We thus conclude that Yang forfeited any challenge to the trial court's judgment on the cause of action for negligent misrepresentation. Were we to consider the argument, we would find substantial evidence supports the trial court's conclusion that Yang's representation in the lease that the property had "recently passed all final inspection on 04-09-2013 [*sic*]" was an unreasonably false misrepresentation of fact, and that Vu actually and justifiably relied on that misrepresentation to her detriment.

[*]Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6, of the California Constitution.